258 F.3d 986 (9th Cir. 2001)
 SANDRA HENSLEY; JOHN WIEST, JR.; DONNA HOHNSTEIN; LINDA ONHEIBER, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS-APPELLEES,
v.
NORTHWEST PERMANENTE P.C. RETIREMENT PLAN & TRUST, A DEFINED CONTRIBUTION PENSION PLAN; NORTHWEST PERMANENTE P.C., AN OREGON CORPORATION; RETIREMENT PLANS COMMITTEE OF THE NORTHWEST PERMANENTE P.C. RETIREMENT PLAN & TRUST, AN UNINCORPORATED ASSOCIATION; PERMANENTE PHYSICIANS RETIREMENT PLAN FOR NORTHWEST PERMANENTE P.C., A DEFINED BENEFIT PLAN; ADMINISTRATIVE COMMITTEE OF PERMANENTE PHYSICIANS RETIREMENT PLAN FOR NORTHWEST PERMANENTE P.C., AN UNINCORPORATED ASSOCIATION, DEFENDANTS-APPELLANTS.
SANDRA HENSLEY; JOHN WIEST, JR.; DONNA HOHNSTEIN; LINDA ONHEIBER, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS-APPELLANTS,
v.
NORTHWEST PERMANENTE P.C. RETIREMENT PLAN & TRUST, A DEFINED CONTRIBUTION PENSION PLAN; NORTHWEST PERMANENTE P.C., AN OREGON CORPORATION; RETIREMENT PLANS COMMITTEE OF THE NORTHWEST PERMANENTE P.C. RETIREMENT PLAN & TRUST, AN UNINCORPORATED ASSOCIATION; PERMANENTE PHYSICIANS RETIREMENT PLAN FOR NORTHWEST PERMANENTE P.C., A DEFINED BENEFIT PLAN; ADMINISTRATIVE COMMITTEE OF PERMANENTE PHYSICIANS RETIREMENT PLAN FOR NORTHWEST PERMANENTE P.C., AN UNINCORPORATED ASSOCIATION, DEFENDANTS-APPELLEES.
SANDRA HENSLEY; JOHN WIEST, JR.; DONNA HOHNSTEIN; LINDA ONHEIBER, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS-APPELLEES,
AND
KATE BURNHAM, PLAINTIFF,
v.
NORTHWEST PERMANENTE P.C. RETIREMENT PLAN & TRUST, A DEFINED CONTRIBUTION PENSION PLAN, NORTHWEST PERMANENTE P.C., AN OREGON CORPORATION; RETIREMENT PLANS COMMITTEE OF THE NORTHWEST PERMANENTE P.C. RETIREMENT PLAN & TRUST, AN UNINCORPORATED ASSOCIATION; PERMANENTE PHYSICIANS RETIREMENT PLAN FOR NORTHWEST PERMANENTE P.C., A DEFINED BENEFIT PLAN; ADMINISTRATIVE COMMITTEE OF PERMANENTE PHYSICIANS RETIREMENT PLAN FOR NORTHWEST PERMANENTE P.C., AN UNINCORPORATED ASSOCIATION, DEFENDANTS-APPELLANTS,
AND
BANK OF CALIFORNIA NA, NATIONAL BANKING ASSOCIATION, TRUSTEE FOR NORTHWEST PERMANENTE PC RETIREMENT PLAN AND TRUST.; KATHLEEN HOLAHAN, M.D., FIDUCIARY FOR NORTHWEST PERMANENTE PC RETIREMENT PLAN & TRUST; JAN COLLINS, MD, FIDUCIARY FOR NORTHWEST PERMANENTE PC RETIREMENT PLAN AND TRUST; NICHOLAS DEMORGAN, MD FIDUCIARY FOR NORTHWEST PERMANENTE PC RETIREMENT RETIREMENT PLAN & TRUST; CHRISTOPHER P. NELSON, MD, FIDUCIARY FOR NORTHWEST PERMANENTE PC RETIREMENT PLAN AND TRUST; FRED M. NOMURA, FIDUCIARY FOR NORTHWEST PERMANENTE PC RETIREMENT PLAN & TRUST; HARRY STATHOS, MD, FIDUCIARY FOR
NORTHWEST PERMANENTE PC RETIREMENT PLAN AND TRUST; WILIAM WARD, MD, FIDUCIARY FOR NORTHWEST PERMANENTE PC RETIREMENT PLAN AND TRUST; ANN STENZEL, FIDUCIARY FOR NORTHWEST PERMANENTE PC RETIREMENT PLAN AND TRUST, DEFENDANTS.
 No. 99-35936,, No. 99-35962,, No. 00-35025
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted May 8, 2001--Portland, Oregon
Filed August 2, 2001
 
 [Copyrighted Material Omitted]
 Counsel John V. Acosta, James N. Westwood and Scott E. Crawford, Stoel Rives Llp, Portland, Oregon, for the defendants-appellants-cross-appellees.
 Karen O'Kasey, Schwabe, Williamson & Wyatt, Portland, Oregon, for the plaintiffs-appellees-cross-appellants.
 D.C. No. CV-96-01166-JMS On appeal from the United States District Court for the District of Oregon Janice M. Stewart, Magistrate Judge, Presiding
 Before: Alfred T. Goodwin, Morton I. Greenberg,* and Johnnie B. Rawlinson, Circuit Judges.
 
 Greenberg, Circuit Judge
 
 1
 This matter comes on before this court on the appeal by Northwest Permanente P.C. ("NWP") and the related defendants from the district court's order for summary judgment reflecting its decision that NWP, as administrator for two pension plans, abused its discretion in interpreting the term "employee" in determining that the plaintiffs, a group of nurse practitioners and physician assistants employed by the Kaiser Foundation Health Plan (the "Kaiser Health Plan"), an affiliate of NWP, were not eligible for pension benefits under the NWP plans. The plaintiffs cross-appeal from the district court's decision to apply an arbitrary and capricious standard of review to the administrators' determinations rather than reviewing them de novo. Finally, NWP appeals from the district court's order awarding attorney's fees to the plaintiffs predicated upon its conclusion that the plan administrators had abused their discretion in interpreting the NWP pension plans. We affirm the district court's decision to apply an abuse of discretion standard, but reverse its decision that NWP abused that discretion in interpreting the pension plans. Accordingly, we also reverse the district court's award of attorney's fees to the plaintiffs.
 
 I. BACKGROUND
 
 2
 NWP is a private corporation formed by a group of physicians to provide medical services to members of the Kaiser Permanente Medicare Care Program (the "Kaiser Program"). The Kaiser Program provides prepaid healthcare services to groups and individuals enrolled in the Kaiser Health Plan, a nonprofit qualified health maintenance organization, which provides administrative and financial services within the Kaiser Program. The Program fulfills its obligations to Kaiser members by maintaining an affiliate, Kaiser Foundation Hospitals ("Kaiser Hospitals"), to provide hospital facilities, and by contracting with independent groups of physicians"(Medical Groups") to provide medical services. The Kaiser Health Plan and Kaiser Hospitals are affiliates and share a common board of directors. The Medical Groups are separate entities that contract with the Kaiser Health Plan to provide medical services. The plaintiffs, a group of nurse practitioners and physician assistants, work for and receive their compensation and retirement and health benefits from the Kaiser Health Plan. They work with NWP physicians and other health care professionals, essentially the Medical Groups.
 
 
 3
 NWP sponsors two pension benefit plans: the Northwest Permanente P.C. Retirement Plan and Trust (the "NWP Plan") and the Permanente Physicians Retirement Plan for Northwest Permanente P.C. (the "Physicians Plan"). We refer to these plans together as the "Plans." The NWP Plan is a defined contribution plan administered by a ten-person committee appointed by the NWP president. The Physicians Plan is a defined benefit plan administered by a ten-member committee comprised of physicians and employees of the Kaiser Health Plan and various Medical Groups. The committees do not include any nurse practitioners or physician assistants.
 
 
 4
 On December 22, 1994, the named plaintiffs anonymously tried to submit claims for benefits under the Plans. Following correspondence between counsel regarding the nature of the plaintiffs' claims, plaintiffs were informed on April 26, 1995, that for their claims to be considered, they would have to reveal their identities. On June 28, 1995, the plaintiffs revealed their identities and submitted to the respective Plan administrators a "formal claim and demand" for pension benefits.
 
 
 5
 On July 28, 1995, the NWP Plan administrator denied the plaintiffs' claim for benefits under that Plan. By letters dated September 21 and 22, 1995, the plaintiffs requested a hearing and review of the decision under the NWP Plan. Meanwhile, on September 20, 1995, the Physicians Plan administrator similarly denied the plaintiffs' claim for benefits. The plaintiffs did not immediately appeal from the Physicians Plan administrator's decision.
 
 
 6
 Thereafter, on November 3, 1995, the NWP Plan administrator granted the plaintiffs' request for a hearing and review of the initial denial. The administrator's letter stated that the plaintiffs could "appear, with their attorneys, and submit evidence and arguments in support of their position " and "submit in advance of the hearing evidence and written arguments they wish to be considered prior to the hearing. " The letter asked the plaintiffs to advise the NWP Plan administrator of any additional documents or information they wanted.
 
 
 7
 The plaintiffs did not request any additional information from the NWP Plan administrator, choosing instead, by letter dated November 27, 1995, to inform the administrator that they were withdrawing their request for a hearing and that they wanted a "final decision [to] be made upon this matter based on the record as it stands." The NWP Plan committee then reviewed the earlier decision, and on January 30, 1996, informed the plaintiffs that it was affirming the administrator's decision.
 
 
 8
 Then, on June 11, 1996, the plaintiffs requested review of the Physicians Plan administrator's decision, submitting with their request additional evidence and argument. Thereafter, the Physicians Plan committee affirmed the administrator's decision denying the plaintiffs benefits.
 
 
 9
 In denying the plaintiffs' claims, both Plan administrators relied primarily on the conclusion that the plaintiffs were not "employees" of NWP, the Plans' sponsor. According to the terms of both Plans, a person is eligible to participate only if he or she is a "Qualified Employee." A "Qualified Employee" is defined by the NWP Plan, in relevant part, as"any employee of Employer." "Employer" is defined as NWP. Similarly, the Physicians Plan defines a "Qualified Employee," in relevant part, as "any employee of the Medical Group." The "Medical Group" is defined as NWP. Neither Plan specifically defines "employee," an omission that gave rise to the plaintiffs' claim. The administrators applied a "W-2" definition to the term, finding that because NWP does not and never has treated the plaintiffs as W-2 employees for Internal Revenue Service purposes, they were not eligible for benefits under the Plans.
 
 
 10
 On behalf of themselves and approximately 150 similarly situated individuals, plaintiffs brought suit seeking injunctive relief and a declaratory judgment that they were entitled to pension benefits under the two Plans pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§§§ 1001-1461.[1] On May 2, 1997, the district court granted the plaintiffs' motion for class certification.[2] The defendants then moved for a determination that the arbitrary and capricious standard of review governed the district court's review of the administrators' decisions. The district court initially stayed the defendants' motion pending the completion of limited discovery and thereafter denied the motion without prejudice pending completion of the additional discovery on the issue. Following discovery, the defendants renewed their motion which the district court granted, adopting the arbitrary and capricious standard.
 
 
 11
 Then, the parties filed cross-motions for summary judgment. In an Opinion, Order and Judgment dated August 13, 1999, the district court granted and denied each motion in part. The court vacated the administrators' decisions that the plaintiffs were not "employees," reasoning that they had abused their discretion in applying the W-2 definition of employee. The court remanded the case to the Plan administrators for a new determination of the plaintiffs' eligibility for benefits under the common law definition of "employee." The defendants then appealed to this court on September 13, 1999. Thereafter, on September 23, 1999, the district court granted the defendants' Motion for Stay of Administrative Remand Proceedings Pending Appeal and, on that day, the plaintiffs cross-appealed.
 
 
 12
 In the meantime, on August 26, 1999, the plaintiffs filed a petition for attorney's fees and costs, which the district court granted on December 7, 1999, awarding the plaintiffs $159,547.02 in fees and costs. Defendants then separately appealed from that order.
 
 II. JURISDICTION
 
 13
 The district court had jurisdiction over this ERISA matter pursuant to 29 U.S.C. §§ 1132(e)(1) and 28 U.S.C. §§ 1331. It is not clear, however, that we have jurisdiction inasmuch as the district court, after concluding that the Plan administrators abused their discretion by applying an incorrect legal standard, rather than completing the disposition of the case, remanded it to the Plan administrators for redetermination of the plaintiffs' eligibility for benefits.
 
 
 14
 With exceptions not germane here, courts of appeals have jurisdiction solely over appeals from "final decisions of the district courts of the United States." 28 U.S.C.§§ 1291. A final decision "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Catlin v. United States, 324 U.S. 229, 233, 65 S. Ct. 631, 633 (1945). The issue with respect to our jurisdiction thus becomes whether the district court's remand order is appealable as a final decision under section 1291.
 
 
 15
 We twice have addressed the question of whether district court orders remanding ERISA determinations to administrators in circumstances somewhat similar to those here are appealable. The first time, in Snow v. Standard Insurance Co., 87 F.3d 327, 329 (9th Cir. 1996), overruled on other grounds by Kearney v. Standard Insurance Co., 175 F.3d 1084 (9th Cir. 1999) (en banc), the district court remanded the case to the ERISA plan administrator for further evidence development even though the court had addressed the merits of the matter and concluded that there was evidence to support the plan administrator's decision. In our opinion we stated, without discussion, that we had jurisdiction pursuant to section 1291. Id. at 330. We held that the district court erred in remanding the matter and thus we reversed its judgment and remanded the case to the district court to make an"ultimate decision based on the record" already compiled. Id. at 333.
 
 
 16
 The second time, in Williamson v. Unum Life Insurance Co. of America, 160 F.3d 1247, 1252 (9th Cir. 1998), we analyzed the jurisdictional issue in an action seeking payments on a disability policy and concluded that we were without jurisdiction. There, the plaintiff sued the plan administrator seeking to recover benefits that the administrator terminated because it claimed that the plaintiff did not cooperate with it by providing documentation regarding her continued disability. See id. at 1249. The plan administrator first filed a motion seeking a partial summary judgment declaring that the district court would apply an abuse of discretion standard in reviewing the administrator's decisions. See id. The district court denied the motion and sua sponte granted partial summary judgment in favor of the plaintiff determining that de novo review was the proper standard. See id. Thereafter, the administrator filed a second motion for summary judgment, arguing that it was entitled to terminate benefit payments because the plaintiff failed to cooperate with it as required by the policy. See id. at 1250. The district court also denied that motion, instead remanding the matter to the administrator to supplement the record and make a determination as to the plaintiff's disability. See id. The plan administrator then appealed from the district court's two orders. See id.
 
 
 17
 On appeal, we concluded that, absent special circumstances, orders granting partial summary judgment are not appealable final orders pursuant to section 1291. See id. Finding no special circumstances in the case, we dismissed the appeal. See id. In doing so, we distinguished Snow by finding that the district court in Williamson only granted partial summary judgment, never addressed the merits of the plaintiff's claim, and never entered a final judgment pursuant to Fed. R. Civ. P. 58. See id. at 1252.
 
 
 18
 Just as Snow is distinguishable from Williamson, Williamson is distinguishable from this case. Here, the defendants' appeal arises from the district court's decision on a dispositive summary judgment motion directly implicating fundamental eligibility decisions under the Plans. Further, in the process of disposing of the parties' cross-motions for summary judgment, the district court entered judgment in favor of the plaintiffs requiring the Plan administrators to revisit their initial decisions. In Williamson the district court did not make any such decision as it simply remanded the matter to the plan administrator to supplement the record "and make a determination of whether Plaintiff continued to be disabled from the time her benefits were suspended to the present, " id. at 1250, so as to be eligible for benefits. The administrator in Williamson, of course, unlike the administrators here who rejected plaintiffs' claims on the merits, never had addressed the plaintiff's claim on the merits, as the Williamson administrator predicated its rejection of the claim on the procedural ground that the plaintiff failed to cooperate with it as the policy required.
 
 
 19
 Although Williamson is distinguishable, as are opinions by other courts addressing similar issues, in Williamson we drew a useful analogy between a district court order remanding a case to an administrative agency and an order remanding a case to an ERISA plan administrator. See Williamson, 160 F.3d at 1251; see also Rekstad v. First Bank Sys., Inc., 238 F.3d 1259, 1262 (10th Cir. 2001); Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan, 195 F.3d 975, 979 (7th Cir. 1999). An order remanding a case to an administrative agency "is appealable only when: (1) the district court order conclusively resolve[d] a separable legal issue, (2) the remand order forces the agency to apply a potentially erroneous rule which may result in a wasted proceeding, and (3) review would, as a practical matter, be foreclosed if an immediate appeal were unavailable." Williamson , 160 F.3d at 1251 (quoting Rendleman v. Shalala, 21 F.3d 957, 959 n.1 (9th Cir. 1994)) (internal quotation marks omitted). The Williamson court found that none of the above factors were met in that case. See id.
 
 
 20
 Here, however, the Rendleman formulation is satisfied. First, the district court conclusively decided a separable legal issue, namely, the criteria for determination of who is an "employee" that the Plan administrators were required to apply in interpreting the pension plans. Second, if the district court had erred in requiring the Plan administrators to apply the common law definition of employee, then the district court's order would have forced the Plan administrators to apply an erroneous rule. This application could have resulted in a wasted proceeding if the Plan administrators adhered on remand to their conclusion that plaintiffs were not employees. Third, if the defendants could not appeal here, as a practical matter under the possible scenarios that could develop on the remand, the Plans might be precluded from obtaining review of the district court's decision.
 
 
 21
 With respect to possible outcomes on the remand, we point out the following. In one possible outcome, the administrators could conclude that the plaintiffs are not "employees" under a common law definition. The plaintiffs then could file suit again, but they likely would argue only that application of the common law definition of employee requires that they be deemed employees. In that scenario it is doubtful that the Plan administrators would be able to seek to set aside their own decision, and thus they might not be able to challenge the district court's order requiring them to apply the common law definition.
 
 
 22
 In the second possible outcome, the administrators could conclude that the plaintiffs are employees under a common law definition. The plaintiffs would not challenge this decision and, again, it is questionable whether the Plan administrators then could challenge their own decision. While the Plan sponsor potentially could challenge the way the administrators applied the common law definition, if the district court agreed with the sponsor that the administrators had erred, review of the issue of whether the administrators had erred in applying a W-2 definition of the term "employee " would be precluded. As far as we can see, only if the Plan sponsor sued and the district court upheld the administrators' decisions is it likely that the W-2 issue could be revisited.[3]
 
 
 23
 Applying the Rendelman factors cited in Williamson, and given that appellate jurisdiction is necessary to ensure proper review of an important legal question which a remand may make effectively unreviewable, we conclude that the district court's order constituted a final appealable order so that we have jurisdiction pursuant to section 1291.
 
 
 24
 III. STANDARD OF REVIEW OF ADMINISTRATORS' DECISIONS
 
 
 25
 We review de novo the district court's choice and application of the standard of review applicable to decisions by ERISA plan administrators. See Lang v. Long-Term Disability Plan of Sponsor Applied Remote Tech., Inc., 125 F.3d 794, 797 (9th Cir. 1997); Taft v. Equitable Life Assurance Soc'y, 9 F.3d 1469, 1471 (9th Cir. 1993).
 
 
 26
 Although ERISA establishes a right to judicial review of benefits decisions, the statute does not set forth the appropriate standard of review for such determinations. But in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S. Ct. 948 (1989), the Supreme Court addressed the issue. There, the Court held that a court should review a denial of benefits challenged pursuant to 29 U.S.C. §§ 1132(a)(1)(B) de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. at 115, 109 S. Ct. at 956-57. The Court recognized, however, that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a `facto[r] in determining whether there is an abuse of discretion.' "[4] Id. at 115, 109 S. Ct. at 957 (quoting Restatement (Second) of Trusts §§ 187, Comment d (1959)).
 
 
 27
 In cases in which the beneficiary alleges that the administrator has a conflict of interest, we follow a two-part test to determine whether to use a heightened level of scrutiny in reviewing the administrator's benefits decisions.[5] See Atwood v. Newmont Gold Co., 45 F.3d 1317, 1323 (9th Cir. 1995). As we stated in Atwood:
 
 
 28
 First, we must determine whether the affected beneficiary has provided material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary. If not, we apply our traditional abuse of discretion review. On the other hand, if the beneficiary has made the required showing, the principles of trust law require us to act very skeptically in deferring to the discretion of an administrator who appears to have committed a breach of fiduciary duty.
 
 
 29
 Id. In the latter circumstance, the plan must rebut the presumption by producing evidence to show that the conflict of interest did not affect its decision to deny or terminate benefits. See Lang, 125 F.3d at 798. Should it fail to carry its burden, the court's review is de novo " `without deference to the administrator's tainted exercise of discretion.' " Id. (quoting Atwood, 45 F.3d at 1323).
 
 
 30
 The plaintiffs, in their cross-appeal, contend that the district court erred in applying the arbitrary and capricious standard of review to the Plan administrators' decisions. They allege that there were conflicts of interest inherent in the administrators' decisionmaking process warranting application of the de novo standard of review. The parties do not dispute that both Plans give their respective administrators plenary discretion to interpret their terms and make eligibility determinations. Therefore, the district court's review should have been for abuse of discretion unless the plaintiffs proffered unrebutted evidence that the Plan administrators were operating under a conflict of interest.
 
 
 31
 Turning first to the NWP Plan, the plaintiffs argue that the administrators were operating under a pecuniary conflict in that NWP's financial performance would be affected detrimentally through its funding of the NWP Plan if the plaintiffs were entitled to benefits under the Plan. More specifically, all ten current members of the NWP Plan committee are NWP employees and all but two are NWP physicians. A majority of the NWP Plan committee members are also shareholders of NWP, as are most of the physicians it employs. The plaintiffs allege that the annual financial performance of NWP can affect salary levels for NWP employees, including whether bonuses and dividends are paid. Therefore, "each of the share-holder members of the NWP Plan Committee had a personal pecuniary interest in the outcome of their decisions, because their salaries, bonuses and dividends are driven in whole or in part by NWP's financial performance." Cross-Appellants' Br. at 21-22. To this end, the plaintiffs proffered evidence that if NWP had approved their claims, the potential negative impact on NWP would be approximately $400,000 to $2,700,000, depending on net revenue, with a materiality threshold of $505,000 for 1995 and 1996.
 
 
 32
 We have recognized that there is at least an apparent conflict of interest where, as here, a plan administrator is also the plan's funding source. See Friedrich v. Intel Corp., 181 F.3d 1105, 1109 (9th Cir. 1999); Lang, 125 F.3d at 797. The relevant inquiry under Atwood, then, is whether the plaintiffs proffered material, probative evidence tending to show that the NWP Plan administrator's self-interest caused a breach of its fiduciary obligations. We have held that a plan administrator's failure to follow its internal procedures for denying benefit claims is evidence that the administrator acted because of a conflict of interest. See Friedrich, 181 F.3d at 1110 (concluding plaintiff showed conflict of interest where there were procedural irregularities in initial claims process and unfair appeals process). Further, inconsistencies in a plan's handling of a benefits claim has been held to constitute evidence that the administrator's decision was tainted by self-interest. See Lang, 125 F.3d at 798-99 (finding plaintiff proffered sufficient evidence where plan administrator offered differing and inconsistent reasons for denial of benefits).
 
 
 33
 The plaintiffs contend that "[t]here was substantial evidence of an actual conflict of interest." Cross-Appellants' Br. at 21. In their brief, however, they cite to very little to support this claim and principally instead restate the conclusory allegation that because the NWP Plan administrator had a financial stake in the outcome of the eligibility determination, the administrator had a personal pecuniary conflict of interest.
 
 
 34
 It is true that they also point to alleged procedural irregularities that in their view demonstrate that the NWP Plan administrator was operating under a conflict. However, we are satisfied that their claim is not substantiated. For instance, the plaintiffs contend the review of the initial benefits determination was improper because Stoel Rives, the law firm representing the Plan, drafted the letter affirming the administrator's prior decision. They argue this indicates that the decision was not a product of a decision by the NWP Plan administrator, but was instead the result of improper influence from counsel. The district court found there was no evidence that the NWP Plan administrator breached its fiduciary role inasmuch as there was testimony from a NWP Plan committee member that he had input into the letter's drafting, the committee was informed of the issues surrounding the benefits decision and the letter at a meeting that lasted several hours, and the committee therefore was free to reject the letter and reach a different conclusion, but decided not to do so. Put simply, there was no evidence that this decisionmaking process was abnormal for the NWP Plan administrator.
 
 
 35
 The plaintiffs also contend the administrator's determinations were tainted by a statement by Ann Stenzel, the Director of Pensions and Benefits for NWP, that the Physicians Plan administrator was going to deny the plaintiffs' claim. Because NWP "worked closely" with the Physicians Plan committee, the plaintiffs contend "improper influences came to bear on the process." As the district court found, however, there is no evidence that this statement influenced the NWP Plan administrator in any way so as to render its decision procedurally flawed. The NWP Plan committee was still free to make its own decision, and there is no indication it did not.[6]
 
 
 36
 The plaintiffs set forth nothing on this appeal to warrant our reaching a different conclusion. Without any evidence that the NWP Plan administrator engaged in any irregular procedural conduct in handling the claims, and given the fact that the administrator consistently denied the claims because the plaintiffs were not "employees" of NWP, we affirm the district court's decision to adopt the abuse of discretion standard in reviewing the NWP Plan administrator's decision.
 
 
 37
 Turning next to the Physicians Plan, the plaintiffs contend the administrator denied their claims because of a systemic conflict of interest. More specifically, the Physicians Plan committee was comprised of employees of the Kaiser Health Plan and of various Medical Groups similar to NWP around the country. In addition to the Physicians Plan, the Physicians Plan committee administers several other benefit plans within the Kaiser Program. Because the Kaiser Health Plan operates in approximately eleven states, contracting with thirteen different medical groups, "[t]he issues raised by plaintiffs' claims could have significance for several of the medical groups." Essentially, the plaintiffs argue the Physicians Plan administrator denied their claims to prevent a "snowball" effect in the other plans on a nationwide scale.
 
 
 38
 In support of their position, the plaintiffs proffer a statement in a letter to the Physicians Plan committee members that reads, "as this is an issue which could have significance for several of the medical groups, we have been working closely with [NWP] and outside counsel in evaluating and monitoring these claims." Cross-Appellants' Br. at 25. Further, they claim there were procedural irregularities in that the Physicians Plan committee never met to discuss the plaintiffs' claim. They assert that instead, Ellen Canter, an individual they contend did not have the authority to make the decision, made the initial decision denying the plaintiffs' claim. Finally, they claim that there were irregularities in the decision to deny the plaintiffs' claim on review because the committee made its determination using ballots that simply asked whether the committee members "agreed" with the decision to deny benefits.
 
 
 39
 The plaintiffs' proffer is insufficient. First, the record does not support the plaintiffs' allegation that an individual without the authority to do so made the initial decision regarding benefits. Although Canter is not a member of the Physicians Plan committee, the committee properly delegated to her the authority to act on its behalf. With regard to delegation of certain fiduciary duties the Physicians Plan states:
 
 
 40
 Each Committee may allocate and delegate any of its duties (other than trustee responsibilities as defined by ERISA) to subcommittees comprised of Committee members, or to any person or persons, which may include or be limited to Committee members. No person has any discretionary authority in connection with the Plan or Plan Assets unless properly delegated.
 
 
 41
 Furthermore, the Plan provides that "[e]ach Committee establishes procedures for carrying out its duties and powers and keeps records of its proceedings, acts, and other data necessary to administer the Plan." Although the defendants did not produce documentary evidence showing the delegation of authority from the Physicians Plan administrator to Canter, affidavits from her and Kirk E. Miller, a Physicians Plan committee member, stated that the committee for several years had delegated to Canter the authority to make initial claim determinations. Finally, nothing in the Physicians Plan requires that the delegation be in writing. Therefore, rather than demonstrating that there had been a procedural irregularity, the record establishes that the procedure leading to the initial benefits determination was entirely consistent with the Physicians Plan's normal operating procedures.
 
 
 42
 Second, the record simply does not support the claim that there were irregularities in the review of the initial decision. The Physicians Plan authorizes the committee to"act in writing without a meeting." Therefore, it was not improper to use ballots to make the benefits decision. Further, the plaintiffs are incorrect in implying that the ballots gave the committee members only one choice. In actuality, the ballots offered two choices: (1) "I agree that the Claimants request for benefits under the [Physicians Plan] for [NWP] should be denied" and (2) "I believe that the Claimants request for benefits under the [Physicians Plan] for [NWP] should be approved." Therefore, again there is no evidence of a procedural defect in the committee's decision.
 
 
 43
 Finally, while the statement to the Physicians Plan committee members that their decision could have significance for several other Medical Groups is probative, it alone does not establish the committee acted out of a conflict of interest. Indeed, there is no evidence that this statement affected the members' decisions in any way.
 
 
 44
 Therefore, we conclude that the plaintiffs failed to proffer material, probative evidence, beyond the mere fact of the apparent conflict, tending to show the two committees' alleged self-interest caused them to breach their fiduciary obligations. Accordingly, we affirm the district court's application of the arbitrary and capricious standard of review to the Plan administrators' decisions.
 
 IV. DEFINITION OF EMPLOYEE
 
 45
 Having concluded that the district court correctly decided to review the plan administrators' decision for abuse of discretion, we now consider the merits of that review. In reviewing the district court's order on a motion for summary judgment, we review de novo whether any genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-52, 106 S. Ct. 2505, 2510-12 (1986). We draw all reasonable inferences in favor of the non-moving party. See id. Additionally, we review a district court's review of an ERISA plan administrator's decision de novo. See Canseco v. Construction Laborers Pension Trust, 93 F.3d 600, 605 (9th Cir. 1996); Snow, 87 F.3d at 331.
 
 
 46
 NWP contends that the district court erred in ruling that the Plan administrators abused their discretion by utilizing a W-2 definition of employee, rather than adopting a federal common law definition of the term. On ruling on NWP's motion for summary judgment, the district court characterized the issue as "whether by construing the term `employee' as a W-2 employee, the [administrators] committed legal error," for "[i]f the [administrators] committed legal error by employing an improper legal standard, then they abused their discretion." The court ruled that the term "employee" has a well-established common law meaning that the Supreme Court articulated in Nationwide Mutual Insurance Co. v. Darden, 503 U.S. 318, 323-24, 112 S. Ct. 1344, 1348 (1992). Therefore, its meaning is not ambiguous and the administrators did not have discretion to apply their own definition. Thus, the court ruled that by applying a W-2 definition, the administrators committed legal error, and accordingly abused their discretion.
 
 
 47
 Our determination of whether the district court's decision was correct turns on whether, as a matter of law, a term used, but not otherwise defined, by an ERISA pension plan that has an established federal common law meaning is unambiguous so that a plan administrator has no discretion to interpret its meaning. Neither the district court nor the plaintiffs cite to any cases supporting this position. Indeed, analogous case law suggests that merely because a term has a common law definition it is not unambiguous, so that an administrator is precluded from exercising discretion in its interpretation.
 
 
 48
 Thus, in Allen v. Western Conference of Teamsters Pension Trust Fund, 788 F.2d 648, 650 (9th Cir. 1986), we upheld the denial of benefits to a surviving spouse even though the plan administrator's definition of a plan term conflicted with its established definition. In Allen, following her husband's death, the plaintiff sought survivor benefits under his pension plan to which she would have been entitled had she been a "surviving spouse" under the terms of the plan. See id. at 649. The term "surviving spouse" was defined as"the person to whom the Vested Participant or Pensioner was married on the date of his death and throughout the one-year period ending on his death." Id. The plan administrator interpreted this definition to require that the surviving spouse actually have been married to the participant, construing marriage strictly to require a legal marriage relationship. See id. Unfortunately, although the plaintiff and the pensioner had a civil wedding ceremony and lived as husband and wife until the pensioner's death, because the decedent's prior marriage was not final at the time they were married, the marriage was void. See id.
 
 
 49
 The plaintiff argued, pursuant to California statutory law, that she was entitled to benefits as a "putative spouse." See id. California law provides that where a marriage is void or voidable, but one or more of the spouses believed it to have been valid, a court may award the party the status of putative spouse. See id. This status has been held to entitle the spouse to: treat marital property as community property; receive workers' compensation benefits; take by intestacy; sue for wrongful death; and claim death benefits under a public employees' benefit plan. See id. Therefore, the plaintiff contended that she should be treated as a surviving spouse for the purposes of the pension plan. See id. The court rejected this argument, however, finding no authority for the proposition that putative and legal spouses must be treated the same for all purposes. See id. Because of this, and because the pension plan used the term "married," the express terms of the plan governed. See id. at 650. The court therefore held that the denial of benefits was proper. See id.
 
 
 50
 While not directly on point here, Allen nevertheless is instructive as to our approach in analyzing an administrator's interpretation of a plan term in the face of a contrary legal definition. Allen demonstrates that the decision of the plan administrator to apply its own definition may be upheld although state law in effect defines the disputed term differently.
 
 
 51
 The Court of Appeals for the Sixth Circuit's opinion in Administrative Committee of the Sea Ray Employees' Stock Ownership & Profit Sharing Plan v. Robinson, 164 F.3d 981, 986 (6th Cir. 1999), cert. denied, 528 U.S. 1114, 120 S. Ct. 931 (2000), which held that a plan administrator had the discretion to interpret and construe an undefined term in the plan, also is instructive. There, the plaintiffs sought de novo review of the administrator's interpretation of the term "partially terminated," as they argued that, as a matter of law, a court rather than the administrator should provide the determination of its meaning. See id. The court rejected this argument finding that because the plan granted discretion to the administrator, the "discretion to interpret and construe the Plan logically extends to terms of the Plan, since any interpretation of a plan turns on the meaning of terms contained therein." Id. In doing so, it noted that "[t]o limit an administrator's discretion to only those terms explicitly defined [by the plan] would undermine the administrator's discretionary power or require companies to write interminably long plans to account for every term." Id.
 
 
 52
 While the issues presented are not identical, we nevertheless find the Robinson analysis persuasive. Although arising in the context of the appropriate standard of review in considering the plan administrator's decision, the Robinson plaintiffs made a similar claim to that which the plaintiffs here put forth: that the court, rather than the plan administrators, should define an undefined plan term. But, as the Robinson court held, if the courts limited an administrator's discretion to the interpretation of defined terms, they would frustrate the discretionary power expressly conferred on the administrator by the plan. We should avoid such an inappropriate result here even though the plaintiffs urge us to require the Plan administrators to adopt a definition set forth by the Supreme Court rather than a definition we or the district court supplies. Regardless of which court's definition is used, if we required the Plans to use a judicially-crafted definition, we would be inappropriately depriving the administrators of their discretion to interpret the Plans.
 
 
 53
 We emphasize that there is nothing in the language of the Plans limiting the administrators' discretion to the interpretation of defined terms. To the contrary, the Plans expressly provide that their respective administrators have "absolute" or "sole discretion" to interpret the terms of the Plan and to determine eligibility for benefits under the Plan. Second, there is nothing in Darden from which we can conclude that the Supreme Court meant its definition of"employee" to apply to all ERISA plans where the term otherwise was undefined. The Court simply construed the term "employee" as it is used in ERISA for the purpose of determining who has standing to sue under section 1132(a). See Darden, 503 U.S. at 320-21, 112 S. Ct. at 1347. In doing so, the Court did not indicate that an administrator need apply this definition in interpreting individual ERISA plans. Indeed, as the Court of Appeals for the Seventh Circuit has recognized,"[n]othing in ERISA . . . compels a plan to use the term `employee' in the same way it is used in the statute." Trombetta v. Cragin Fed. Bank for Sav. Employee Stock Ownership Plan, 102 F.3d 1435, 1440 (7th Cir. 1996) (internal quotation marks omitted). Instead, ERISA contemplates that there will be plans that do not cover all categories of employees, a strong indication that the terms do not have to be construed the same way. See Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 91, 103 S. Ct. 2890, 2896-97 (1983) ("ERISA does not mandate that employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits.").
 
 
 54
 Therefore, we find that the district court erroneously concluded that, in the absence of a definition in the Plans, the administrators were required, as a matter of law, to apply the federal common law definition of employee. Rather, plan administrators should be given the full benefit of the discretion afforded to them by their respective plans in interpreting plan terms, be they defined or undefined, with the reasonableness of those interpretations being evaluated against the relevant factual and legal backgrounds.[7]
 
 
 55
 The relevant inquiry then becomes whether the definition applied by the administrators was arbitrary and capricious. The arbitrary and capricious standard of review requires the district court to give substantial deference to an administrator's decision. Indeed, an administrator's decision"is not arbitrary unless it is not grounded on any reasonable basis." Horan v. Kaiser Steel Ret. Plan, 947 F.2d 1412, 1417 (9th Cir. 1991) (internal quotation marks omitted). Accordingly, a court may overturn a decision only where it is "so patently arbitrary and unreasonable as to lack foundation in factual basis and/or authority in governing case or statute law." Oster v. Barco of Cal. Employees' Ret. Plan, 869 F.2d 1215, 1219 (9th Cir. 1988) (internal quotation marks omitted); see Concrete Pipe & Prods. of Cal., Inc. v. Construction Laborers Pension Trust, 508 U.S. 602, 623, 113 S. Ct. 2264, 2279-80 (1993).
 
 
 56
 Here, in determining that the plaintiffs were not employees, the Plan administrators applied a W-2 definition. According to the administrators, the Plans were designed with only W-2 employees of NWP in mind, namely NWP physicians. Therefore, it was clearly reasonable to apply a W-2 definition because that application limited disbursements of benefits to persons whom the Plans were intended to benefit. Furthermore, the Plan administrators relied upon an Internal Revenue Service private letter ruling that stated that W-2 employees of entities within the Kaiser program other than NWP were not to be considered employees of NWP for tax purposes. Thus, it hardly could be argued seriously that adoption of a W-2 definition was unreasonable on the theory that there was no justifiable basis to exclude plaintiffs from the category of NWP W-2 employees.
 
 
 57
 We recently have held that a consistent pattern of interpretation is "significant evidence" that the plan administrator acted reasonably. See McDaniel v. Chevron Corp. , 203 F.3d 1099, 1113 (9th Cir. 2000); see also Hansen v. Western Greyhound Ret. Plan, 859 F.2d 779, 781 (9th Cir. 1988). Additionally, both Plan administrators informed the plaintiffs in writing that the W-2 definition consistently had been followed with respect to eligibility under the Plans. Finally, the Plan administrators considered the Darden factors in determining whether the plaintiffs were employees pursuant to the terms of the Plans, and concluded that they were not.
 
 
 58
 In light of the evidence presented to the district court, and reviewing its decision de novo, we conclude the district court erred in denying NWP's motion for summary judgment. The Plan administrators' decisions were not "so patently arbitrary and unreasonable as to lack foundation in factual basis and/or authority in governing case or statute law." To the contrary, there was adequate support in the record from which the district court could, and should, have concluded that the Plan administrators did not abuse their discretion. We therefore reverse the district court's decision denying NWP's motion for summary judgment, and direct the district court to enter summary judgment in its favor. See Lawyers Title Ins. Corp. v. Honolulu Fed. Sav. & Loan Ass'n, 900 F.2d 159, 164 (9th Cir. 1990) (noting where record supports only one resolution of factual issue, or mixed question of law and fact, reviewing court can order lower court to enter judgment on issue); see also Martinez v. United States, 669 F.2d 568, 570 (9th Cir. 1981) (same).
 
 
 59
 In view of our foregoing conclusions, we need not address NWP's alternative argument that it has set forth an adequate basis from which it would be reasonable to conclude that the plaintiffs are not employees of NWP under the common law definition. We note, however, that there was sufficient evidence of record to establish that the Plan administrators assessed the plaintiffs' relationship with NWP in light of the appropriate Darden factors and concluded that the plaintiffs were not common law employees. But, inasmuch as we predicate our decision on our conclusion that the Plan administrators did not abuse their discretion in applying a W-2 definition of employee, we do not address this issue further.
 
 V. ATTORNEY'S FEES
 
 60
 We review a district court's award or denial of a request for attorney's fees for abuse of discretion. See McElwaine v. US West, Inc., 176 F.3d 1167, 1171 (9th Cir. 1999); Hope v. International Bhd. of Elec. Workers, 785 F.2d 826, 831 (9th Cir. 1986). Here, however, plaintiffs as a matter of law are not entitled to recover attorney's fees as ERISA permits the award of attorney's fees only to a participant, beneficiary or fiduciary who succeeds on any significant issue in litigation which achieves some of the benefit brought in bringing suit. See 29 U.S.C. §§ 1132(g)(1); Flanagan v. Inland Empire Elec. Workers Pension Plan & Trust, 3 F.3d 1246, 1253 (9th Cir. 1993). In light of our conclusions, it is clear the plaintiffs have not prevailed on any issue in the litigation and that a court would abuse its discretion if it awarded them attorney's fees. Therefore, we reverse the district court's award of attorney's fees.
 
 VI. CONCLUSION
 
 61
 We affirm the district court's application of an abuse of discretion standard in reviewing the Plan administrators' decisions, but we reverse its decision that the administrators abused their discretion by not applying the federal common law definition of employee, and we reverse the award of attorney's fees. We remand the matter to the district court to enter judgment for the defendants.
 
 
 62
 AFFIRMED IN NO. 99-35962; REVERSED IN NOS. 99-35936 and 00-35025.
 
 
 63
 COSTS TAXED IN FAVOR OF DEFENDANTS-APPELLANTS-CROSS-APPELLEES.
 
 
 
 Noted:
 
 
 *
 The Honorable Morton I. Greenberg, Senior United States Circuit Judge for the Third Circuit, sitting by designation.
 
 
 [1]
 The plaintiffs also raised breach of fiduciary duty claims against various members of the administrative committees in their individual capacities, and sought injunctive relief against the Bank of California, the trustee of funds for one of the Plans. On January 16, 1997, the district court granted the defendants' motion to dismiss the breach of fiduciary duty claims and consequently all individual defendants were dismissed from the case. The district court also dismissed the Bank of California as a party of no interest.
 
 
 [2]
 All parties consented to allow a magistrate judge enter final orders and judgments in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. §§ 636(c).
 
 
 [3]
 We recognize that when a court tries to foresee possible outcomes of litigation in complicated situations its opinion necessarily will have a certain speculative quality to it. Nevertheless, we think that consideration of the third Rendelman criterion makes it appropriate for us to contemplate what would be the future course of this litigation if we dismiss this appeal.
 
 
 [4]
 Our opinions use the phrases"arbitrary and capricious" and "abuse of discretion" interchangeably. Compare Eley v. Boeing Co., 945 F.2d 276, 278-79 (9th Cir. 1991), with Dytrt v. Mountain State Tel. & Tel. Co., 921 F.2d 889, 894 (9th Cir. 1990). Any difference between the two standards, however, is in name only. See Atwood v. Newmont Gold Co., 45 F.3d 1317, 1321 n.1 (9th Cir. 1995).
 
 
 [5]
 In analyzing this issue, the district court devoted significant attention to what another district court had determined to be an inconsistency in our approach to conflict of interest cases, citing Palmer v. Univ. Med. Group, 994 F. Supp. 1221, 1232 (D. Or. 1998). In Palmer , the court found that some panels of this court have assumed that there were certain situations in which the administrator inherently was conflicted and therefore the court automatically applied a heightened level of scrutiny, the level of which depended on the circumstances of the case. See Palmer, 994 F. Supp. at 1232; see also Barnett v. Kaiser Found. Health Plan, 32 F.3d 413, 416 (9th Cir. 1994); Taft, 9 F.3d at 1474; Bogue v. Ampex Corp., 976 F.2d 1319, 1325 (9th Cir. 1992); Jung v. FMC Corp., 755 F.2d 708, 711-12 (9th Cir. 1985). In contrast, other panels have adopted a burden-shifting approach which requires the plaintiff to present proof that the administrator's decision actually was tainted by conflict, which, only if unrebutted by the plan administrator, would result in the application of the de novo standard. See Palmer, 994 F. Supp. at 1232; see also Snow, 87 F.3d at 331; Atwood, 45 F.3d at 1323. To resolve this apparent conflict, the Palmer court drew a distinction between ERISA cases dealing with "discretionary policy decisions," where the administrator's motive was found to be highly relevant, and those cases involving "benefits determinations," where the focus should be on the merits of the decision rather than the motives of the parties. See Palmer v. Univ. Med. Group, 973 F. Supp. 1179, 1189 (D. Or. 1997). The court found that the case before it involved discretionary policy decisions. See id. The distinction drawn by the Palmer court of this court's analyses, however, is nonexistent. The Palmer court cited several cases that stated, generally, that because there was a conflict of interest, the court would apply a more stringent version of the abuse of discretion standard. The court interpreted this language to mean that those courts had adopted a slidingscale approach. In Atwood, however, we interpreted those same cases and found they left open the question of "in what way this lesser degree of deference actually alters [the court's] review. " Atwood, 45 F.3d at 1322. We answered this open question by adopting the two-step analysis, one that we since consistently have applied. See, e.g. , Friedrich v. Intel Corp., 181 F.3d 1105, 1109 (9th Cir. 1999); Lang, 125 F.3d at 798; Snow, 87 F.3d at 331. Therefore, notwithstanding the district court's concerns, the Atwood two-step analysis is the controlling law which we will apply in this case.
 
 
 [6]
 In addition to the foregoing argument, the plaintiffs claimed in the district court that Stenzel, rather then the NWP Plan administrator, made the initial determination to deny benefits. They claimed Stenzel had no authority to make such decisions, and that the decision actually may have been made by attorneys for NWP from Stoel Rives, whom Stenzel consulted in making the determination. The district court found, however, that Stenzel had the authority under the Plan's terms to make initial benefits determinations. Further, the court found that it was not improper for Stenzel to consult outside counsel and that despite evidence that Stoel Rives may have been operating under a conflict in that it represented both the employer and the fiduciary, and it consulted with counsel for the Physicians Plan, there was no evidence that any conflict influenced the benefits decision. See Ashenbaugh v. Crucible, Inc. 1975 Salaried Ret. Plan, 854 F.2d 1516, 1531-32 (3d Cir. 1998). The plaintiffs do not appear to challenge this finding on appeal which in any event is not assailable.
 
 
 [7]
 To this end, we note the district court's concerns that "allowing the plan administrator to supply any definition it sees fit, [would cause] the plan administrator [to] rarely, if ever, commit an abuse of discretion . . . [and] make a mockery of even the lenient arbitrary and capricious standard of review" are unfounded. While we hold that administrators have the discretion to interpret undefined terms even though statutory or common law defines them, we do not suggest that a court reviewing the reasonableness of an administrator's interpretation must be oblivious to common law definitions. Indeed, we recognize that some persons might be excluded from and some might be included within the definition of "employee" in both a W-2 and common law sense. Yet we do not foreclose the possibility that a court in an appropriate case could find that the administrator's definition was so gross a deviation from an accepted meaning of a term that the administrator by adopting the definition abused its discretion.
 
 
 RAWLINSON, Circuit Judge, concurring:
 
 64
 I agree with the majority, for the reasons set forth in the majority opinion, that the district court had jurisdiction over this case. I also agree that the district court properly applied the arbitrary and capricious standard in reviewing the Plan Administrators' decisions. Finally, I agree that the award of attorney's fees by the district court should be reversed, and costs of appeal taxed in favor of defendants.
 
 
 65
 I write separately because I find it unnecessary to reach the pivotal issue addressed in the majority opinion: Whether the Plan Administrators had discretion to independently define "employee" for purposes of benefit eligibility. The majority opinion, relying on Allen v. Western Conference of Teamsters Pension Trust Fund, 788 F.2d 648 (9th Cir. 1986); Administrative Committee of the Sea Ray Employees' Stock Ownership & Profit Sharing Plan v. Robinson, 164 F.3d 981 (6th Cir. 1999), cert. denied, 528 U.S. 1114, 120 S.Ct. 931 (2000); and Trombetta v. Cragin Fed. Bank for Sav. Employee Stock Ownership Plan, 102 F.3d 1435, reached the conclusion that the Plan Administrators had discretion to define"employee" irrespective of the common-law definition.
 
 
 66
 I find it unnecessary to reach the issue of the Plan Administrators' discretion to independently define the term"employee", because the Plan Administrators applied common-law factors in determining plaintiffs' eligibility for plan benefits. The Plan Administrators articulated the following reasons for their decisions denying eligibility to plaintiffs:
 
 
 67
 1. Plaintiffs received their compensation, retirement, and welfare benefits from Kaiser Foundation Health Plan (Kaiser), rather than from defendants;
 
 
 68
 2. Kaiser withheld, reported, and paid federal and state payroll taxes;
 
 
 69
 3. Plaintiffs work at facilities owned by Kaiser;
 
 
 70
 4. Defendants did not provide equipment used by plaintiffs in their employment; and
 
 
 71
 5. Kaiser made ultimate employment decisions regarding plaintiffs' pay, benefits, hiring, and termination.
 
 
 72
 In Nationwide Mutual Insurance Co. v. Darden, 503 U.S. 318, 323-24 (1992), the Supreme Court instructed us that "all of the incidents of the [employment] relationship must be assessed and weighed with no one factor being decisive" (citation omitted). With that stricture in mind, I am of the view that defendants adequately considered the "incidents of the relationship" among plaintiffs, Kaiser and defendant Northwest Permanente, and did not act arbitrarily in denying eligibility to plaintiffs. Accordingly, I would REVERSE the district court's decision on the basis that defendants excluded plaintiffs from coverage after considering the common-law employment factors set forth in Darden. I would not reach the issue of whether defendants may define "employee " without reference to the common-law factors.