Glenda A. PETERSON,
Plaintiff/Counterdefendant,

v.

The HOTEL EMPLOYEES AND RES-
TAURANT EMPLOYEES INTERNA-
TIONAL UNION WELFARE FUND,
Defendant/Counterclaimant.

No. CV–S–02–1174–PMP LRL.

United States District Court,
D. Nevada.

Oct. 16, 2003.

Corby D. Arnold, Corby D. Arnold, P.C., Las Vegas, NV, for Peterson, Glenda A., Plaintiff.

Kevin B. Christensen, Kevin B. Christensen, Chtd, Las Vegas, NV, for Defendant.

### *ORDER*

PRO, Chief Judge.

On August 19, 2003, Defendant/Counterclaimant The Hotel Employees and Restaurant Employees International Union Welfare Fund ("Fund") filed a Motion for Summary Judgment (Doc. # 11). Plaintiff/Counterdefendant Glenda A. Peterson filed an Opposition to HERIU Welfare Fund's Motion for Summary Judgment and Counter–Motion for Summary Judgment (Docs.# 12–13) on September 4, 2003. The Fund filed a Reply to Plaintiff/Counterdefendant's Opposition and Counter–Motion for Summary Judgment. (Docs.# 15–16) on September 15, 2003.

### I. BACKGROUND

The parties agree on the material facts underlying the present dispute. The Fund is a multi-employer welfare plan as defined under the Employee Retirement Income Security Act ("ERISA") § 3(a)(37), 29 U.S.C. § 1001 et seq. (Def.'s Separate Statement of Undisputed Material Facts in Support of their Mot. for Summ. J. [hereinafter "Def.'s Statement of Facts"] at 2.) The Fund is established solely to provide welfare benefits to its participants and their designated beneficiaries. (*Id.*) Plaintiff/Counterdefendant Glenda A. Peterson ("Peterson") is a participant in the Fund's Welfare Plan ("Plan") who may be eligible for medical benefits under the Plan. (*Id.*)

On December 12, 1995, Peterson was involved in a car accident in which she sustained back injuries requiring significant medical treatment. (*Id.*) Peterson settled with the other driver in the accident. (Pl./Counterdef.'s Opp'n to HERIU Welfare Fund's Mot. for Summ. J. and Counter–Mot. for Summ. J. [hereinafter "Peterson's Mot. for Summ. J."] at 3.) As a result of the settlement, Peterson received $25,000. (*Id.*) These funds are being held in escrow pending the determination of Peterson's rights to the funds. (*Id.*) She also received $10,000 from her own liability insurance coverage. (*Id.*)

Peterson submitted to the Fund medical claims totaling $44,846.65 for her medical care arising out of the accident. (Def.'s Statement of Facts at 2.) Pursuant to Section 41.1 of the Fund's Welfare Plan Summary Description and Article 33 of the Plan Document, the Fund required Peter-

son to sign and return the Fund's Reimbursement and Subrogation[1] Agreement before the Fund would pay her claims. (*Id.* at 2–3.) Peterson did not sign the Agreement. (*Id.* at 3.)

Instead, pursuant to Article 33 of the Plan, Peterson submitted a written request that the Fund waive subrogation because of the disparity between her recovery and her claims. (Peterson's Mot. for Summ. J. at 4.) The Fund denied this request. (*Id.*) The Fund also denied payment of Peterson's medical claims except for $829.28 for claims which the Fund contends it paid inadvertently. (Def.'s Statement of Facts at 2.) Peterson appealed the denial of benefits to the Fund's Trustees Appeals Subcommittee. (*Id.* at 3.) The Appeals Subcommittee upheld the denial. (*Id.* at 3–4.)

Peterson subsequently filed a civil action in this Court under 28 U.S.C. § 2201 seeking a declaratory judgment defining the parties' rights and responsibilities under the Plan. (Compl.¶¶ 1–2.) In response, the Fund filed an Answer and Counterclaim for Declaratory Judgment (Docs.# 4–5). The parties now cross-move for summary judgment.

## II. CROSS–MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" demonstrate "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The parties agree no genuine issues of material fact exist. The only remaining issue before the Court is the legal question of the parties' rights and obligations under the Plan.

▪■ "A challenge to an ERISA plan's denial of benefits is reviewed *de novo* 'unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Jebian v. Hewlett Packard Co.*, 310 F.3d 1173, 1177 (9th Cir.2002) (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). If a plan grants such discretion, the court reviews the decision for an abuse of discretion. *Id.; see also Alford v. DCH Found. Group Long Term Disability Plan,* 311 F.3d 955, 957 (9th Cir.2002) ("When an ERISA plan, like the one at issue here, explicitly vests its administrator with discretion to determine eligibility for benefits and to construe the terms of the plan, the district court ordinarily reviews the administrator's determinations for abuse of discretion.") (citing *Firestone,* 489 U.S. at 115, 109 S.Ct. 948).

■ Article 2, section 2 of the Fund's Plan grants the Trustees:

the right to decide all questions or controversies of whatever character arising in any manner between any parties or persons in connection with the Fund and Plan or the interpretation thereof, including the construction of the language of these Rules and Regulations, the Summary Plan Description, the Trust Agreement and any writing, decision, benefit or Eligibility determination, instrument, or accounts in connection with same and with the operation of the Fund or otherwise, which shall be binding upon all persons dealing with the Fund

1. "Subrogation is the insurer's right to be put in the position of the insured, in order to recover from third parties who are legally responsible to the insured for a loss paid by the insurer." *Barnes v. Indep. Auto. Dealers Ass'n of Cal. Health and Welfare Benefit Plan,* 64 F.3d 1389, 1392 (9th Cir.1995) (citing 16 Couch on Insurance 2d § 61:1 at 75 (rev. ed.1983)).

or claiming any benefits thereunder, except to the extent that the Trustees may subsequently determine, in their sole discretion, that their original decision was in error or to the extent such decision may be determined to be arbitrary or capricious by a court or arbitrator having jurisdiction over such matters. (Fund's Mot. for Summ. J., Aff. of Maria Martinez–Riach, Ex. D.) Because the Plan grants the Trustees discretionary authority to decide controversies concerning eligibility determinations, the Court reviews the Fund's denial of Peterson's benefits for an abuse of discretion.[2]

When reviewing a plan administrator's decision for an abuse of discretion, the reviewing court must uphold the decision to deny benefits "if it is based upon a reasonable interpretation of the plan's terms and was made in good faith." *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 944 (9th Cir.1999) (quotation and citation omitted). The court does not decide whose interpretation of the plan's language is most persuasive, but only whether the administrator's interpretation is reasonable. *MacDonald v. Pan Am. World Airways, Inc.*, 859 F.2d 742, 744 (9th Cir. 1988). "Accordingly, a court may overturn a decision only where it is so patently arbitrary and unreasonable as to lack foundation in factual basis and/or authority in governing case or statute law." *Hensley v. Northwest Permanente P.C. Ret. Plan & Trust*, 258 F.3d 986, 1001 (9th Cir.2001) (quotation and citation omitted).

Article 33 of the Plan Document, entitled "Subrogation," provides:

This Plan shall recover the amount of benefits it pays on behalf of Participants and their Eligible Dependents for medical, hospital, dental and vision care Expenses resulting from an accident for which someone else (a third party) is legally responsible and required to pay.

In the case of claims involving third-party liability, *the Plan will pay benefits under the following conditions:*

(a) *The Person (and his lawyer if he or she has one) must provide the Plan with written notarized subrogation documents in which the Person agrees to repay the Plan the amount of benefits the Plan pays on a claim out of any recovery of expenses he receives.* The Plan will not be entitled to repayment of more than the benefits it pays on a claim or more than the amount a Person receives in recovery.

(Fund's Mot. for Summ. J., Aff. of Maria Martinez–Riach, Ex. B (emphasis added).) The Fund's Plan Summary Description also explains the Plan's subrogation rights:

Situations sometimes arise when benefits are payable from the Plan for medical expenses incurred by a participant or dependent, where that covered person has a legal right to receive full or partial payment of the medical bills from some other source....

Under the Plan's subrogation policy, the Plan has the legal right to be reimbursed in full for all medical and other benefits paid by it to or on behalf of you or any of your dependents ....

When you file a claim for benefits under the Plan, you are required to inform the Fund Office if the expense is the result of an accident or was caused by another person. If that is the case the Fund Office will send you a subrogation agreement. *In order to receive benefits from the Plan, you must first complete, sign, notarize, and return the subrogation agreement,* providing complete information covering the accident

---

**2.** Peterson agrees the Court reviews the Fund's decision in this case for an abuse of discretion. (Peterson's Mot. for Summ. J. at 5.)

and giving the Plan full rights of recovery against all persons who may be liable for the benefits paid or to be paid by the Plan.

(*Id.,* Ex. A (emphasis added).)

The Fund's decision to deny Peterson benefits unless and until she signs and returns the subrogation agreement was not an abuse of discretion. The decision is based on the plain language of both the Plan Document and the Plan Summary Disposition. According to the Plan Document, where a claim arises as the result of third-party conduct, the Fund conditions payment of benefits on the participant signing and returning the subrogation agreement. And the Plan Summary Disposition clearly states that to receive benefits, participants first must sign and return the agreement. Because Peterson did not execute and return the subrogation agreement, the Fund's decision to deny her benefits was a reasonable interpretation of the Plan's terms. Consequently, the decision was not arbitrary or lacking in reasonable basis.[3]

Peterson nevertheless contends the federal common law "make whole" rule precludes the Fund from seeking subrogation in this case. Peterson relies on *Barnes v. Indep. Auto. Dealers Ass'n of Cal. Health and Welfare Benefit Plan* to support her position. 64 F.3d 1389 (9th Cir.1995). In *Barnes,* the Ninth Circuit "adopt[ed] as federal common law th[e] generally accepted rule that, in the absence of a clear contract provision to the contrary, an insured must be made whole before an insurer can enforce its right to subrogation." *Id.* at 1395.

Peterson argues the Plan does not expressly reject the make whole rule, and thus that rule controls. She argues that because the third-party payments did not make her whole, the Fund cannot assert its subrogation rights. Peterson also contends the Plan's terms do not permit the Fund to seek subrogation until after it has made payments on her claims. Peterson argues that because the Fund has made no payments on her claims, the Fund cannot request subrogation at this time.

The Court concludes *Barnes* does not control the outcome in this case. The *Barnes* court reviewed the administrator's decision in that case de novo. *Id.* at 1392 ("Because the Plan document in this case gives no such discretionary authority to any administrator, de novo review is appropriate in this case."). Here, the Court reviews the Fund's decision for an abuse of discretion. *Jebian,* 310 F.3d at 1177. As discussed above, the Fund did not abuse its discretion in denying Peterson's claim for failure to execute and return the subrogation agreement.

The Fund also did not abuse its discretion by asserting its right of subrogation against Peterson in light of the Plan's terms rejecting the "make whole" rule. The "make whole" rule is a " 'gap-filler' " which the Ninth Circuit stated courts should not apply if the plan documents specifically allow the plan the right of first reimbursement even if the participant is not first made whole. *Barnes,* 64 F.3d at 1395.

The Plan Document conditions the Fund's duty to pay benefits on claims involving third-party liability on the participant "provid[ing] the Plan with written notarized subrogation documents in which the Person agrees to repay the Plan the amount of benefits the Plan pays on a claim out of *any* recovery of expenses he

---

**3.** Peterson does not claim the Fund acted in bad faith. *See Bendixen,* 185 F.3d at 944 (reviewing court must uphold a plan administrator's decision under an abuse of discretion standard if the decision is based on a reasonable interpretation of the plan's terms and was made in good faith).

receives." (Fund's Mot. for Summ. J., Aff. of Maria Martinez–Riach, Ex. B (emphasis added).) Subsection (h) of Article 33 of the Plan Document states:

> While the Plan expects *full reimbursement for all benefits paid on behalf of the Person or his Eligible Dependent,* there may be special circumstances in which full reimbursement is not required by the Trustees. *In determining whether or not full reimbursement will be required, the Trustees may consider such factors as insufficient recovery* .... The Person or Eligible Dependent must make a request in writing for this special consideration.

(*Id.*) According to the Plan Summary Disposition's subrogation provisions, "to receive benefits from the Plan, [a participant] must *first* complete, sign, notarize, and return the subrogation agreement ...." (*Id.*, Ex. A (emphasis added).)

Based on these provisions, the Court concludes the Fund did not abuse its discretion by attempting to assert subrogation rights under the Plan even though Peterson was not first made whole. The Fund reasonably could interpret the Plan's provisions conditioning the Fund's duty to pay on the participant's signing of the subrogation agreement as prioritizing the Fund's subrogation rights over the participant's rights to be made whole by third-party payments. Article 33 subsection (h) specifically contemplates situations where the participant receives less than full recovery. In such situations, the Plan Document does not subordinate the Fund's subrogation rights to the participant's right to be made whole. Rather, it permits the Trustees to consider requiring less than full reimbursement upon the participant's written request. The Plan Summary Disposition is more explicit: to receive benefits, participants *first* must sign and return the subrogation agreement.

Despite the Plan's language and structure, Peterson argues the Plan contains "no express language abrogating the 'make whole' doctrine." (Peterson's Mot. for Summ. J. at 7.) The Court declines to accept Peterson's reading of *Barnes* that a plan's documents must contain a provision stating, in effect: "The plan rejects the federal common law 'make whole' rule." *Barnes* held the "make whole" rule applies "only when the parties are *silent* " and "in the absence of a clear contract provision to the contrary." *Barnes* at 1394, 1395 (emphasis added). The *Barnes* court stated it "would not apply the interpretive 'make-whole rule' as a 'gap-filler' if the subrogation clause in the Plan document specifically allowed the Plan the right of first reimbursement out of any recovery Barnes was able to obtain even if Barnes were not made whole." *Id.* at 1395. As discussed above, the Fund reasonably could interpret the Plan Document and Plan Summary Disposition's terms as addressing the priority of the Plan's subrogation rights.

Peterson also argues the Fund is not entitled to subrogation until after it makes payment on her claims. Because the Fund has made no payments (other than approximately $800), Peterson contends the Fund is not entitled to subrogation. This may be correct under the Plan's provisions, but that question is not presently before the Court. Under the Plan Document and Plan Summary Disposition, the Fund is not obligated to pay Peterson's claims until she signs and returns the subrogation agreement. But Peterson has not executed the subrogation agreement, and may choose never to do so. The Court will not issue an advisory opinion on the contours of the Fund's obligations based on a hypothetical set of facts that may never come to fruition. *See Indus. Communications Sys., Inc. v. Pac. Tel. & Tel. Co.,* 505 F.2d 152, 155 (1974) (Article III of the United States Constitution "bars federal courts

from giving advisory opinions or from considering hypothetical cases") (citing *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–241, 57 S.Ct. 461, 81 L.Ed. 617 (1937)).

## III. CONCLUSION

IT IS THEREFORE ORDERED that Defendant/Counterclaimant The . Hotel Employees and Restaurant Employees International Union Welfare Fund's Motion for Summary Judgment (Doc. # 11) is hereby GRANTED and Plaintiff/Counterdefendant Glenda A. Peterson's Opposition to HERIU Welfare Fund's Motion for Summary Judgment and Counter–Motion for Summary Judgment (Docs.# 12–13) is hereby DENIED. Judgment is hereby entered in favor of Defendant and against Plaintiff.

IT IS FURTHER ORDERED that both parties' requests for attorneys fees pursuant to 29 U.S.C. § 1132(g)(1) are hereby DENIED.