**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

METROPOLITAN LIFE INSURANCE
COMPANY, a New York
corporation,
                        *Plaintiff,*

            v.

EILEEN M. PARKER, aka Eileen
Marrero,
            *Defendant-Appellant,*          No. 03-16518

ANITA PIETROFITTA; ESTATE OF          D.C. No.
SCOTT PARKER, by and through its      CV-01-00881-JAT
personal representative.
            *Defendants-Appellees,*

            and

ZACHARY DRY, a minor child by
and through his natural mother
and guardian Lisa Dry,
                        *Defendant.*

1281

METROPOLITAN LIFE INSURANCE
COMPANY, a New York
corporation,

*Plaintiff,*

v.

EILEEN M. PARKER, aka Eileen
Marrero,

*Defendant-Appellee,*

ANITA PIETROFITTA,

*Defendant-Appellant,*

and

ZACHARY DRY, a minor child by
and through his natural mother
and guardian Lisa Dry; ESTATE OF
SCOTT PARKER, by and through its
personal representative.

*Defendants.*

No. 03-16620

D.C. No.
CV-01-00881-JAT

OPINION

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, District Judge, Presiding

Argued and Submitted
June 15, 2005—San Francisco, California

Filed February 2, 2006

Before: Richard C. Tallman, Jay S. Bybee, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Bybee

**COUNSEL**

Richard M. Waugh, Richard M. Waugh, Ltd., Phoenix, Arizona, for defendant-appellant Eileen Marrero.

Candess J. Hunter and Isabel M. Humphrey, Phoenix, Arizona, for defendant-appellee/cross-appellant Anita Pietrofitta.

David L. Haga and Jennifer R. Houde, Gallagher & Kennedy, P.A., Phoenix, Arizona, for defendant-appellee estate of Scott Parker.

Kevin J. Parker, Snell & Wilmer, Phoenix, Arizona, for defendant-appellee Zachary Dry.

---

**OPINION**

BYBEE, Circuit Judge:

This is a cautionary tale for ERISA administrators. We are met with three claimants to an ERISA-governed life insurance policy held by the decedent, Scott Parker: Anita Pietrofitta, his widow; Eileen Marrero, his ex-wife; and the Estate of Scott Parker, which represents Zachary Dry, a son born to a third woman five months after Parker died. Metropolitan Life Insurance Company ("MetLife") declared the policy proceeds owing but could not identify the proper beneficiary and filed this action in interpleader in the District of Arizona. We narrow the field from three to two and remand to the district court for further findings of fact.

## I.  BACKGROUND AND PROCEEDINGS

The Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* governs the administration of employer-provided benefit pension plans. Congress

passed the Act to protect the interests of the participants in these plans and their designated beneficiaries and to provide employers with uniform guidelines and rules regarding the administration of benefit plans. *See* 29 U.S.C. §§ 1001(a)-(c), 1001b(a)-(c). The two most basic components of any ERISA plan are the plan administrator and the plan documents. The plan administrator is a fiduciary charged with the duty to administer the benefit plan "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent [with ERISA]." 29 U.S.C. § 1104(a)(1)(D). The fiduciary is responsible for paying benefits to the "beneficiary," who is a "person designated [1] by a participant, or [2] by the terms of an employee benefit plan." 29 U.S.C. § 1002(8).

Scott Parker worked for Bank of America and participated in the Bank of America Group Benefits Program at the time of his death. Through the program, Parker obtained an insurance policy from MetLife for $120,000 in basic life insurance benefits and $337,000 in additional option benefits, for a total life insurance coverage of $457,000. Bank of America's plan was subject to ERISA.

Parker and Eileen Marrero married in 1981. In 1990, Parker executed a will leaving his entire estate to Marrero, provided that she survived him for longer than four months. On October 11, 1991, Marrero filed a Petition for Dissolution of Marriage in the Superior Court of Maricopa County in Arizona, and Parker accepted service of the petition four days later. Just two weeks later, on October 29, 1991, Parker executed a Beneficiary Designation and Change Form to distribute his ERISA benefits. Under the line to designate the "Primary Beneficiary(ies)," there were five boxes to be filled in: "Name," "Relationship to You," "Relationship Code," "% of Benefits to be Allocated," and "Social Security Number (if available)." The box labeled "Relationship Code" referred to six codes listed at the bottom of the page: "SP-Spouse," "CH-Child(ren)," "PA-Parent," "TR-Trust," "ES-Estate," and "OT-

Other." Parker filled in three of the five boxes. On the line for "Name" he wrote "As Indicated in My Will." In the space provided under "Relationship Code" he wrote "ES" for estate. He then allocated 100% of his benefits and left the remaining two boxes—"Relationship to You" and "Social Security Number"—blank. No will was attached to the beneficiary designation form, which Bank of America accepted without objection.

On December 20, 1991, the State of Arizona dissolved Parker and Marrero's marriage pursuant to her petition for dissolution. Eight years later, in 1999, Parker married Anita Pietrofitta. Parker died on July 21, 2000, and as far as the parties can document, failed to revise or alter his 1990 will or his 1991 beneficiary designation form.

In probate proceedings in Arizona, the Maricopa County Superior Court ruled that the testamentary devise under Parker's 1990 will was revoked by operation of Arizona's divorce revocation statute, ARIZ. REV. STAT. § 14-2804. The court then found that, there being no will, Parker died intestate. The court awarded Parker's estate to Pietrofitta. *See* ARIZ. REV. STAT. § 14-2102(1). A wrinkle appeared when Parker's son from a different relationship was born on December 6, 2000, more than five months after Parker's death. The court amended the order of intestacy and declared Zachary Dry, the recently born son, an heir of Parker's and entitled to one-half of Parker's separate property and all of Parker's undivided one-half community property share.

Although the record is silent on this point, it appears that the ERISA plan administrators at Bank of America had no clue how to distribute Parker's insurance proceeds. MetLife filed this interpleader action in the District of Arizona to determine the proper beneficiary of Parker's life insurance benefits. It named Pietrofitta, Marrero, Dry and other potential claimants as defendants. The district court dismissed MetLife from the action and awarded MetLife attorneys' fees.

Three parties filed summary judgment motions, none of whom disputed the underlying facts of the litigation. The parties disagreed as a matter of law as to whether the plan benefits should be paid to: (1) Marrero under the testamentary devise in Parker's will pursuant to his designation that benefits be paid "As Indicated [by his] Will"; (2) Parker's Estate as indicated by his designation of "ES" or "Estate" under the "Relationship Code" box on the beneficiary designation form; or (3) Pietrofitta as Parker's surviving wife in accordance with the default plan documents.

The district court held that, although Parker wrote "As Indicated in My Will" as the name of the only beneficiary on the beneficiary designation form, that designation is not a person under ERISA because it does not designate an "individual" or one of the statutorily defined beneficiaries in 29 U.S.C. §§ 1002(8)-(9). Since Parker had written "ES" in the "Relationship Code" portion of the beneficiary designation form, however, the district court found that the designation of his estate was consistent with Parker's designation of "As Indicated in My Will." Accordingly, the district court found that "Parker designated his Estate as the beneficiary of the [plan] benefits." The district court also noted that its "finding [was] consistent with ERISA policies because the plan administrator would have to look only at the plan documents—not the Will or state law—in paying the Policy benefits to the designated beneficiary."

Both Marrero and Pietrofitta appeal the decision of the district court.

## II.   JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to the interpleader statute, 28 U.S.C. § 1335; *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 535 (1967), and the presence of a federal question, 28 U.S.C. § 1331. We have jurisdiction to review final district court orders, including the denial of Mar-

rero's and Pietrofitta's Motions for Summary Judgment, and the grant of the Estate's Motion for Summary Judgment. *See* 28 U.S.C. § 1291; *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 675-76 (9th Cir. 2005).

We review de novo an order granting summary judgment. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). We also review de novo the district court's interpretation of an ERISA insurance policy's language. *Shaver v. Operating Eng'rs Local 428 Pension Trust Fund*, 332 F.3d 1198, 1201 (9th Cir. 2003); *Cisneros v. UNUM Life Ins. Co.*, 134 F.3d 939, 942 (9th Cir. 1998). We review the district court's findings of fact for clear error. *Mont. Right to Life Ass'n v. Eddleman*, 343 F.3d 1085, 1090 (9th Cir. 2003).

## III. ANALYSIS

**[1]** We are asked to determine the proper beneficiary of Parker's benefit plan. Under ERISA, a beneficiary is determined in one of two ways: it is designated by the participant or by the terms of an employee benefit plan. The facts of this case involve the unfortunate situation where neither the participant, nor the beneficiary designation form clearly designate the beneficiary. Our task is further complicated by ERISA's silence on how ERISA plan administrators are to determine the proper designee in situations where they are presented with conflicting or ambiguous designations. While ERISA does not specifically address these situations, there are general provisions and directives that guide us in our resolution of the issue.

**[2]** As in any determination of the award of benefits under any ERISA plan, we begin with an examination of the governing plan documents. ERISA requires a benefit plan to "specify the basis on which payments are made to and from the plan." 29 U.S.C. § 1102(b)(4). It requires the fiduciary to administer the plan "in accordance with the documents and instruments governing the plan," 29 U.S.C. § 1104(a)(1)(D),

and to make payments to a "beneficiary designated by a participant, or by the terms of a plan," 29 U.S.C. § 1002(8). A "beneficiary" is defined as "a *person* designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8) (emphasis added). "Person" is subsequently defined as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." 29 U.S.C. § 1002(9).

Beyond ERISA's general requirement that a fiduciary administer the plan in accordance with the plan documents, 29 U.S.C. § 1104(a)(D)(1), we have little to guide us in this particular case. We have had this matter thrust upon us through the device of interpleader precisely because the plan fiduciaries do not know how to distribute the proceeds from Parker's insurance policy. We take, then, as our task to determine, first, whether Parker made an unambiguous designation of a beneficiary and, second, if he did not, whether the plan documents provide a default beneficiary. *See* 29 U.S.C. § 1002(8).

We thus turn to Parker's beneficiary designation form, most of which Parker failed to complete. There are two items on the form relevant to the disposition of this case: Parker listed "ES" (code for "Estate") in the "Relationship Code" box, and in the box directly to the right, entitled "Name," Parker listed "As Indicated in My Will." We must determine whether one, neither, or the two designations read together establish a beneficiary cognizable under ERISA.

**[3]** First, Parker's designation of "ES" in the "Relationship Code" box is not a valid designation. The district court concluded that the designation was valid because an estate is a valid "person" for purposes of determining a beneficiary under sections 1002(8) and (9). By themselves, however, the relationship codes do not identify a beneficiary; rather, they

identify categories of persons or entities who might be beneficiaries. The relationship codes describe the relationship of the named beneficiary to the plan participant and serve to classify or clarify the named beneficiary.[1] While an estate is a "person" under section 1002(9), and consequently can be a beneficiary under section 1002(8), the relationship code "Estate" is capable of representing a number of things and cannot, by itself, unambiguously designate a beneficiary. *See* BLACK's LAW DICTIONARY 586-89 (8th ed. 2004) (discussing a variety of meanings.). Thus, for reasons that will become clear in this case, it is not clear that the relationship code "Estate" refers to the same thing as "estate" in 29 U.S.C. § 1002(9). Consequently, we disagree with the district court's conclusion that the relationship code "ES" designated a valid beneficiary.

**[4]** Second, Parker's reference to "As Indicated In My Will" does not designate a legally valid beneficiary because it is ambiguous. We simply cannot determine Parker's intended beneficiary from these words. It is impossible to tell, for example, whether Parker intended that the beneficiaries identified in the will receive his benefit proceeds only if the will was held valid in probate or whether he intended the proceeds to reach the beneficiaries irrespective of the will's validity. This case illustrates the problem perfectly. Although Pietrofitta claims that there is a second will, only one will has been discovered. Under the 1990 will, Marrero would be the beneficiary of the proceeds. But under Arizona law, that will is invalid, and the Arizona courts have declared Parker intestate. By simply referring to his will—without referring to the date of the will, attaching a copy, or otherwise identifying the document—Parker left us to muse over whether he wanted his beneficiaries to take the proceeds under a document called a "will" or under his will, as provided by law. The answers to these questions point us in contrary directions.

---

[1]The relationship codes may be very useful. If, for example, a plan participant named "Mary Smith" as his beneficiary, the code might clarify whether Mary Smith was the participant's wife ("SP" for spouse) or his mother ("PA" for parent).

**[5]** The district court determined that, by referring to his "will," Parker had not referred to a "person" recognized under 29 U.S.C. §§ 1002(8), (9). Although we agree with the district court that the words "As Indicated in My Will" do not literally refer to a "person" under ERISA, we think the district court's analysis was too narrow. ERISA is silent on the *manner* in which the designation of a beneficiary is made. Consequently, such determinations are left by the governing terms of the benefit plan. We see nothing in ERISA that precludes incorporation by reference, so that a plan participant could, for example, designate his beneficiaries by referring to a list, even though "list" is not a "person" defined in section 1002(9).[2] We conclude that Parker's attempted incorporation fails not because incorporation by reference is, *per se*, inconsistent with ERISA, but because the reference does not clearly identify the beneficiaries. We therefore agree with the district court's conclusion that the designation "As Indicated in My Will" is ineffective; however, we do so on different grounds.

**[6]** Considering the phrase "As Indicated in My Will" together with relationship code "ES" only adds to the confusion. An estate may, of course, pass through a valid will. Since Parker's will is not valid, however, his estate will pass through Arizona's intestate succession laws, and not through his will. We cannot give effect to both of Parker's instructions because the proceeds pass to one party under the will and a different set of parties under his estate.

The Supreme Court's decision in *Egelhoff v. Egelhoff*, 532 U.S. 141 (2001), does not affect our analysis. In *Egelhoff*, David Egelhoff, the plan participant, designated his then-wife

---

[2]Here, however, is one lesson of our cautionary tale: plan administrators disserve both plan participants and beneficiaries when they accept a beneficiary designation that does not unambiguously identify the beneficiaries. If plan administrators will accept a designation by reference, they would be well advised to require that plan participants either attach the documents referred to or otherwise clearly identify where they may be found.

Donna, as his beneficiary. Shortly after they were divorced, David died in a car accident. David's children from a prior marriage argued that, by virtue of the divorce, Donna was disqualified by Washington law from receiving the proceeds. The Court ruled that ERISA preempted the Washington statute and that state law cannot "bind[ ] ERISA plan administrators to a particular choice of rules for determining beneficiary status." *Id.* at 147. The Court emphasized that national uniformity was ensured by "ERISA's commands that a plan shall 'specify the basis on which payments are made to and from the plan,' § 1102(b)(4)." *Id.*; *see also Branco v. UFCW-N. Cal. Employers Joint Pension Plan*, 279 F.3d 1154 (9th Cir. 2002) (holding that ERISA preempted a state court order awarding spousal interest in an employee's pension proceeds).

Nothing that we have said here is contrary to *Egelhoff*. We have referred to Arizona probate proceedings to make clear how Parker's reference to his "will" and his relationship code, "ES," led to contradictory conclusions. We have held only that we cannot determine whether Parker intended to give effect to Arizona's laws when he designated his beneficiary by incorporating by reference his will. Unlike the Washington law at issue in *Egelhoff*, Arizona has not forced the hand of plan administrators or this court; no Arizona law precludes the administrator of this benefit plan from determining the proper beneficiary. *See Egelhoff*, 532 U.S. at 148; *Liberty Life Assurance Co. v. Kennedy*, 358 F.3d 1295, 1300 (11th Cir. 2004) (permitting beneficiaries to be designated through a will); *id.* ("Insurers who offer employee benefit plans under ERISA are free to allow policyholders to change beneficiaries through more than a single means and, so long as the policyholders are informed of the means and the plan administrator complies with its fiduciary obligations, ERISA is not implicated.").

[7] Overall, we are presented with a situation where Parker has made an invalid beneficiary designation on his beneficiary designation form. His attempted designation, therefore, fails.

When a plan participant fails to identify a beneficiary, we must turn to the governing plan documents to ascertain the default beneficiary. *See* 29 U.S.C. § 1002(8) (" '[B]eneficiary' means a person designated by a participant, or by the terms of an employee benefit plan."). Here, however, the parties dispute which of two plans found in the record was in effect at the time of Parker's death. Pietrofitta argues that a Boatmen's Bancshares, Inc. policy was in effect at the time of Parker's death, and that it makes the decedent's spouse the default beneficiary.[3] In contrast, the Estate argues that a Bank of America plan was in effect at the time of Parker's death, and that it establishes the decedent's estate as the default beneficiary.[4] Although the parties advanced these arguments in their opening summary judgment pleadings and at the motions hearing before the district court, the district court did not make a finding of fact as to which plan was in effect at the time of Parker's death.[5] The court referred to the Bank of America plan in its general order, but because of its disposition, never reached the question of which plan governed for purposes of determining a default beneficiary. We cannot tell from the two plan documents in the record their effective dates or how, if at all, they govern Parker's designation. We therefore remand to the district court to make a factual finding

---

[3]That policy reads: "If no beneficiary is named or no beneficiary survives the insured individual, proceeds shall be payable in the following order to: 1) the spouse, if living . . . ."

[4]The Bank of America employee handbook provides: "If you die and no beneficiary designation is in effect as to any part of the insurance, or if there is no designated beneficiary then living with respect to any part of the insurance, the insurance company may, at its option, pay such part to your estate."

[5]At oral argument, counsel for Pietrofitta argued, and counsel for the Estate seemed to concede, that the Estate did not argue below that the Bank of America plan governed and that the argument has been waived. The Estate plainly attached a copy of the Bank of America handbook to its first summary judgment pleading. Documents from both the Boatmen's plan and the Bank of America plan are in the record before us. Moreover, counsel for the Estate at the district court's motions hearing argued that the Bank of America plan governed. The argument has not been waived.

as to which plan governed at the time of Parker's death and to determine the default beneficiary.

## IV.   CONCLUSION

The judgment is reversed, and we remand for further proceedings, consistent with this opinion. Each party to this appeal shall bear its own costs.

REVERSED and REMANDED.