# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STACEY SHANE,
               *Plaintiff-Appellee,*

                   v.

ALBERTSON'S INC., EMPLOYEES'
DISABILITY PLAN; ALBERTSON'S INC.,
EMPLOYEES' LIFE INSURANCE
BENEFITS PLAN; ALBERTSON'S INC.,
EMPLOYEES' MEDICAL AND DENTAL
PLAN; and ALBERTSON'S INC.,
EMPLOYEES' BENEFIT PENSION PLAN,
               *Defendants-Appellants.*

No. 05-56319

D.C. No.
CV 04-1087-AHM

OPINION

Appeal from the United States District Court
for the Central District of California
A. Howard Matz, District Judge, Presiding

Argued and Submitted
June 7, 2007—Pasadena, California

Filed October 15, 2007

Before: Johnnie B. Rawlinson and Stephen S. Trott,
Circuit Judges, and Mary H. Murguia,* District Judge.

Opinion by Judge Murguia;
Dissent by Judge Trott

---

*The Honorable Mary H. Murguia, United States District Judge for the
District of Arizona, sitting by designation.

13969

## COUNSEL

Lisa S. Kantor, Kantor & Kantor LLP, Northridge, California, for the plaintiff-appellee.

W. Mark Gavre, Parsons Behle & Latimer, Salt Lake City, Utah, for the defendants-appellants.

## OPINION

MURGUIA, District Judge:

Albertson's, Inc., Employees' Disability Plan and several other Albertson's Employee Plans ("Albertson's") bring this appeal from the district court's order reversing Albertson's decision to terminate Plaintiff-Appellee Stacey Shane's ("Ms. Shane") Long Term Disability ("LTD") benefits received under Albertson's Employees' Disability Benefits Plan (the "Disability Plan"). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, and we affirm.

## I.   BACKGROUND

Ms. Shane is a former Albertson's employee and participated in Albertson's Disability Plan. In April of 1999, Ms.

Shane suffered a knee injury and began receiving LTD Bene-
fits on January 31, 2000. From January 31, 2000, through Jan-
uary 30, 2002, Ms. Shane received and was continuously re-
approved for LTD benefits. However, based upon the results
of a "2 year Recertification" initiated by Albertson's in April
of 2002, Albertson's Medical Review Committee ("MRC")
discontinued Ms. Shane's LTD benefits beyond April 30,
2003, stating that Ms. Shane no longer met the Disability
Plan's definition of "Total Disability." Ms. Shane's adminis-
trative appeal of the decision was denied on September 23,
2003. On February 16, 2004, Ms. Shane filed the instant suit
in district court pursuant to 29 U.S.C. § 1132(a) of the
Employee Retirement Income Security Act of 1974
("ERISA").

Before the district court, several issues were presented
including whether the court should refer to Albertson's Dis-
ability Plan effective as of August 1, 1993 (the "1993 Disabil-
ity Plan") or the Disability Plan effective as of February 1,
2002 (the "2002 Disability Plan") and the appropriate stan-
dard for reviewing the termination of Ms. Shane's LTD bene-
fits. The district court set the matter for trial on March 22,
2005; however, after receiving briefing from the Parties, the
district court vacated the trial date and took the matter under
submission. On July 26, 2005, the district court ruled in favor
of Ms. Shane by finding that the 1993 Disability Plan gov-
erned Ms. Shane's LTD claim and, in applying the de novo
standard of review, that Ms. Shane was entitled to continue
receiving LTD benefits. The instant appeal by Albertson's
followed.

## II.   STANDARD OF REVIEW

"We review de novo a district court's choice and applica-
tion of the standard of review to decisions by fiduciaries in
ERISA cases." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d
955, 962 (9th Cir. 2006) (en banc) (citation omitted). "Thus,
we review the matter anew, the same as if it had not been

heard before, and as if no decision previously had been entered." *Freeman v. DirecTV, Inc.,* 457 F.3d 1001, 1004 (9th Cir. 2006) (citing *Ness v. Commissioner*, 954 F.2d 1495, 1497 (9th Cir. 1992)). "We also review de novo the district court's interpretation of an ERISA insurance policy's language [and] . . . the district court's findings of fact for clear error." *Metropolitan Life Ins. Co. v. Parker*, 436 F.3d 1109, 1113 (9th Cir. 2006) (citations omitted).

## III.   DISCUSSION

A.   Did the district court err in finding that the 1993 Disability Plan governed Ms. Shane's LTD benefits claim?

Albertson's contends that the district court erred in finding that the 1993 Disability Plan, rather than the 2002 Disability Plan, applied to Ms. Shane's LTD claim. However, Albertson's contention on this point is not supported by the record. Notably, the 1993 Disability Plan, while granting Albertson's the right to amend the provisions of the Disability Plan at any time also expressly provides that:

> [a]ny amendment to the Plan shall be effective only with respect to Total Disabilities which commence on and after the effective date of the amendment. Total Disabilities commencing prior to the effective date of a Plan amendment are to be provided for under the terms of the Plan in effect at the time those disabilities commenced.

**[1]** Importantly, Ms. Shane began receiving her LTD benefits on January 31, 2000, thus qualifying her as a "Total Disability" under the scope of the 1993 Disability Plan and well prior to the effective date of the "Amended and Restated" 2002 Disability Plan. In addition, based upon Ms. Shane's qualification for LTD benefits prior to the effective date of the 2002 Disability Plan, the plain language of the 2002 Disabil-

ity Plan defers to the 1993 Disability Plan by stating that "Total Disabilities commencing prior to the effective date of a Plan amendment are to be provided for under the terms of the Plan in effect at the time those disabilities commenced." Because, Ms. Shane's "Total Disability" commenced while the 1993 Disability Plan was in effect, the subsequent 2002 Disability Plan, by its own terms, has no application.

[2] We also find unpersuasive Albertson's argument that the 2002 Disability Plan applies based upon the fact that the 2002 Disability Plan was in existence prior to the MRC's 2003 decision to terminate Ms. Shane's benefits. Albertson's, citing *Grosz-Salmon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1160-61 (9th Cir. 2001), argues that "[i]t is well settled that the controlling plan is the plan in effect at the time of (sic) the final decision is made." However, Albertson's argument overstates the holding in *Grosz-Salmon* and ignores the plain language of the 1993 and 2002 Disability Plans. In *Grosz-Salmon* the employee's disability coverage claim was governed by the plan in effect at the time the employee's claim accrued because "[n]othing in [the employee's policy with the employer] . . . assured employees that their rights were vested." *Id.* at 1160. In this case, unlike *Grosz-Salmon*, both the 1993 and 2002 Disability Plans possess clear language establishing that Ms. Shane's LTD claim "[is] to be provided for under the terms of the Plan in effect at the time [her] disabilit[y] commenced." Ms. Shane's LTD benefits based upon her "[t]otal [d]isability" commenced during the 1993 Disability Plan and prior to the 2002 Disability Plan, thus her claim is governed by the 1993 Disability Plan. As such, the district court's determination to apply the 1993 Disability Plan is sound.[1]

---

[1]There is dispute between the Parties as to whether the district court's decision to apply the 1993 Disability Plan is subject to a clear error or de novo standard of review. Ninth Circuit authority provides that such a determination is a factual finding subject to clear error standard of review. *See Metropolitan*, 436 F.3d at 1116 (remanding to district court "to make a factual finding as to which plan governed" employee benefits claim). However, under either standard the district court's finding is sound.

B.   Did the district court err in relying on the doctrine of *contra proferentem* in determining that the 1993 Disability Plan governed Ms. Shane's LTD benefit claim?

**[3]** In finding that the 1993 Disability Plan controlled Ms. Shane's LTD claim, the district court cited the doctrine of *contra proferentem* by stating that "[i]f a term is ambiguous it will be construed against the drafter and aligned with the reasonable expectations of the insured." As correctly noted by Albertson's, the doctrine of *contra proferentem* is not applicable to self-funded ERISA plans, such as the Disability Plan at issue in this case. *See Winters v. Costco Wholesale Corp.*, 49 F.3d 550, 554 (9th Cir. 1995) ("[T]he rule of *contra proferentem* is not applicable to self-funded ERISA plans that bestow explicit discretionary authority upon an administrator to determine eligibility for benefits or to construe the terms of the plan."). Therefore, the district court's citation to the doctrine raises a concern regarding its determination that the 1993 Disability Plan controls. However, while the district court cited the doctrine of *contra proferentem*, the district court's decision is wholly absent of any indication that it actually applied the doctrine in construing the provisions of the 1993 and 2002 Disability Plans. A plain reading of the district court's decision demonstrates that none of the relevant terms or provisions construed were deemed to be ambiguous. As such, we find the citation to the doctrine to be immaterial to the district court's ultimate determination applying the 1993 Disability Plan.

C.   Did the district court apply the correct standard of review regarding Albertson's decision to discontinue LTD benefits to Ms. Shane?

Albertson's contends that even if the district court properly relied on the 1993 Disability Plan, its decision to apply the de novo standard of review rather than the abuse of discretion standard to Albertson's decision to terminate Ms. Shane's LTD benefits constitutes reversible error. Albertson's takes

issue with the district court's finding that the MRC, the body that terminated Ms. Shane's LTD benefits, was not properly vested with the requisite discretionary authority to review Ms. Shane's LTD claim, which led to the district court's de novo review.

As an initial matter, there is no issue with the district court's finding that the 1993 Disability Plan provides discretionary authority to the identified Plan fiduciary, the Trustees, to review and evaluate LTD claims such as Ms. Shane's. Notably, the Disability Plan grants the Trustees the authority "[t]o determine all questions relating to the eligibility of Employees for benefits, as well as the amount and payment of benefits." As such, had the Trustees made the decision to discontinue Ms. Shane's LTD benefits the district court would have likely invoked the abuse of discretion standard of review. *See Abatie*, 458 F.3d at 963 ("[I]f the plan *does* confer discretionary authority as a matter of contractual agreement, then the standard of review shifts to abuse of discretion.") (citation omitted) (emphasis in original). However, the MRC, not the Trustees, was the body that made the decision to terminate Ms. Shane's LTD benefits. Therefore, the issue is whether the MRC properly received and was vested with the Trustees' discretionary authority to review Ms. Shane's LTD claim. If the MRC was not properly vested with such discretion, its decision to terminate Ms. Shane's LTD benefits would not be subject to the deferential standard of review of abuse of discretion. *See Jebian v. Hewlett-Packard Co. Employee Benefits Organization Income Protection*, 349 F.3d 1098, 1105 (9th Cir. 2003) ("When an unauthorized body that does not have fiduciary discretion to determine benefits eligibility renders such a decision . . . deferential review is not warranted.") (quoting *Sanford v. Harvard Indus.*, 262 F.3d 590, 597 (6th Cir. 2001)). Importantly, the 1993 Disability Plan provides the Trustees with the power "[t]o delegate to the Contract Administrator and Employees of the Employer such powers and duties as the Trustees shall determine." Such "powers and duties" encompass the discretionary authority to

review LTD claims such as Ms. Shane's. Moreover, because the MRC is made of employees of Albertson's Benefits Review Committee with the assistance of an independent physician, the MRC falls within the scope of persons or bodies eligible to receive the Trustees' discretionary authority.

Despite the existence of the delegation clause and employee makeup of the MRC, the district court appears to have rejected the notion that the MRC was properly vested with discretionary authority to invoke the deferential standard of review because of the lack of any express delegation from the Trustees to the MRC. Specifically, the district court concluded in pertinent part:

> While the Trustees did have the power to delegate their discretionary authority, nothing presented to the Court indicates that such authority was properly delegated. The deposition testimony offered by Mr. [Michael] Hodge is insufficient to establish otherwise. *See Rodriguez-Abreu* [*v. Chase Manhattan Bank, N.A.*], 986 F.2d [580,] . . . 584 (1st Cir. 1993) (holding that *because no plan document* granted discretion to the plan administrator and because the fiduciaries had not expressly delegated their discretionary authority to the plan administrator, the district court employed the *de novo* standard of review) . . . . Defendants admit that the MRC was the body tasked with determining whether Ms. Shane was eligible for LTD benefits . . . . *Because the MRC was not expressly granted discretion*, I find that the proper standard of review is *de novo*.

(Emphasis added).

**[4]** The above language from the district court's order reveals that while it recognized the 1993 Disability Plan's delegation clause, the district court focused on the absence of any documentation of the delegation to the MRC. However,

the focus should have been on whether the Disability Plan contemplated the possibility of a transfer of discretionary authority to a third-party and whether there was evidence establishing delegation to the MRC. *See Hensley v. Northwest Permanente P.C. Retirement Plan*, 258 F.3d 986, 998 (9th Cir. 2001), *overruled on other grounds by Abatie*, 458 F.3d at 966 (holding that delegation of discretionary authority to third-party from identified plan fiduciary was sufficient because plan contemplated delegation; the plan did not require delegation to be in writing; and affidavits were submitted stating that delegation of discretionary authority took place). Thus, at the very least, the district court was required to apply the 1993 Disability Plan's delegation clause as well as evaluate the evidence surrounding the transfer of discretionary authority from the Trustees to the MRC, such as the testimony from Mr. Hodge, the director of Health and Welfare Programs at Albertson's, describing the delegation to the MRC.[2]

[5] However, given this Court's de novo review of the district court's choice and application of the standard of review governing Albertson's termination of Ms. Shane's LTD benefits, we find no cause to reverse or for a remand. When considering and applying the delegation clause in conjunction with the relevant evidence regarding the transfer of discretionary authority to the MRC, it is apparent that the delegation to the MRC was not in compliance with the 1993 Disability Plan's stated requirements. Mr. Hodge's testimony demonstrates the existence of an unauthorized delegation to the MRC, thus invoking the de novo standard of review used by the district court. Specifically, Mr. Hodge's testimony establishes that the Trustees first transferred their discretionary

---

[2]The district court's focus is also evidenced by its statement that "[t]he testimony of Mr. Hodge provides the only basis to find that there was any delegation of authority (from the Trustees to Mr. Snow and from him to the MRC); *there is no documentation of it in the record.*" (Emphasis added).

authority to Jack Snow, the Vice President of Health and Welfare Development, who in turn transferred such discretionary authority to the MRC. However, the 1993 Disability Plan does not contemplate any such procedure for the delegation of discretionary authority. Rather, the delegation clause only contemplates delegation from the Trustees to the "Contract Administrator and Employees of the Employer." There is nothing in the Disability Plan's delegation clause or in the Disability Plan itself that contemplates further delegation from an employee, such as Mr. Snow, to any other body of employees, such as the MRC.[3] Thus, even if the district court expressly and properly considered the delegation clause with the evidence in the record regarding the actual transfer of discretionary authority, the district court would have reached the same result of an improper transfer of discretionary authority, thus mandating the de novo standard of review.

Albertson's asserts that we are precluded from affirming the district court on this basis for two reasons: (1) Ms. Shane did not raise with the district court this specific argument of an improper delegation from the Mr. Snow to the MRC; and (2) the district court did not address Ms. Shane's new argument in its decision. However, neither argument is persuasive.

First, contrary to Albertson's argument, Ms. Shane did raise this argument to the district court. In Ms. Shane's responsive trial brief, she argued that the testimony of Mr. Hodge supports a finding of an improper delegation to the MRC. For instance, Ms. Shane argued in relevant part:

> Mr. Hodge's testimony further evidenced that the

---

[3]The dissent concludes from Mr. Hodge's testimony that the delegation to the MRC was in compliance with the terms of the Disability Plan. However, this conclusion is contrary to Mr. Hodge's express testimony describing that first "the trustees had expressly delegated their discretionary authority to Jack Snow" and second that "[Mr. Snow] in turn delegated that discretionary authority to the Benefit Plan Committee[.]"

Plan Trustees did not delegate this discretionary authority to the Medical Review Committee, rather, it was Jack Snow who completed this delegation. As Jack Snow was not a Trust Plan Trustee, he had no authority to delegate discretionary authority to the Medical Review Committee . . . . As such, Jack Snow's alleged delegation of discretionary authority to the Medical Review Committee, insofar as it was not pursuant to the LTD Plan's specific allowance for such a delegation, was not a proper delegation and does not support a finding sufficient to support the application of the arbitrary and capricious standard of review.

In view of Ms. Shane's argument in the district court, Albertson's contention that had this issue of an improper delegation from Mr. Snow to the MRC been raised to the district court, Albertson's would have supplemented Mr. Hodge's testimony "to elaborate on the delegation and its mechanics" is misplaced. Notably, Albertson's opening brief cites to a portion of Mr. Hodge's testimony that describes the delegation as being first received by Mr. Snow from the Trustees and then subsequently conveyed to the MRC. Thus, the "mechanics" of the delegation to the MRC have been sufficiently established.

Second, we do not deem it significant that the district court, in its decision, did not expressly address or accept Ms. Shane's argument of an improper delegation from Mr. Snow to the MRC. The district court did cite Mr. Hodge's testimony describing the transfer from the Trustees to Mr. Snow and then to the MRC. In addition, because we review this matter anew under the de novo standard of review, we are not limited by the district court's determination. *Freeman*, 457 F.3d at 1004.

## IV.   CONCLUSION

[6] The district court properly applied the 1993 Disability Plan in reviewing Albertson's decision to terminate Ms.

Shane's LTD benefits. While the district court may not have properly applied and expressly considered the 1993 Disability Plan's delegation clause and relevant evidence, we affirm based upon our de novo review, because the record establishes that Albertson's decision-making body, the MRC, was not properly vested with the requisite discretionary authority so as to invoke a deferential standard of review by the district court.

**AFFIRMED.**

TROTT, Circuit Judge, dissenting:

Even if we assume *arguendo* that the 1993 Plan controls, I respectfully disagree with my colleagues' analysis of the standard of review applicable to this controversy, because I believe their approach to be at odds with *Hensley v. Northwest Permanente Retirement Plan & Trust*, 258 F.3d 986 (9th Cir. 2001).[1] There, we held that the district court properly applied an abuse of discretion standard of review where the administrators that denied plaintiffs' claims received their authority via a verbal delegation. In doing so, we said:

> [T]he Plan provides that "each Committee establishes procedures for carrying its duties and powers and keeps records of its proceedings, acts, and other data necessary to administer the Plan." Although the defendants did not produce documentary evidence showing the delegation of authority from the Physicians Plan administrator to Canter, affidavits from her and Kirk E. Miller, a Physicians Plan committee member, state that the committee for several years

---

[1] I am unconvinced that the 1993 Plan governs this dispute. The 2002 Plan was not an amendment to the 1993 Plan, but an entirely new Plan that applied to all cases as of its effective date: February 1, 2002.

had delegated to Canter the authority to make initial claim determinations. Finally, *nothing in the Physicians Plan requires that the delegation be in writing*.

*Id.* at 998 (emphasis added).

Here, the 1993 Plan grants the Trustees discretionary decision-making authority to make decisions and gives it power to "delegate to the Contract Administrator and Employees of the Employer such powers and duties as the Trustees shall determine." As Article IX, § 9.04 of the Plan demonstrates, the Plan does not require that any delegation be in writing; and their authority to delegate is plenary, giving them the power to delegate "such powers and duties as the Trustees shall determine." Michael Hodge indicated that the Trustees verbally invested the Medical Review Committee ("MRC") with authority to review claims, and that MRC exercised the authority for years:

> Q.   And how is it that the Medical Review Committee had fiduciary authority?
>
> A.   It was delegated from the trustees down through Jack Snow to me, and Jack actually was the one who would have delegated the authority to the committee before I was here, and I just carried that on.
>
> . . . .
>
> Q.   And what did Jack Snow specifically state to you that led you to believe that the *trustees had delegated discretionary authority to the committee* to make benefit determinations?
>
> A.   The — over the course of five years or so we discussed that fairly often about delegation of authority and who was responsible for making determination and final determinations.

ER 650 (emphasis added). True, Albertson's did not submit documentary evidence to support Hodge's testimony. However, neither *Hensley* nor the 1993 Plan require such documentation, to the contrary: an oral delegation will suffice. In addition, it appears circumstantially that effective delegation did occur because at the time the MRC ultimately denied Shane's claimed benefits, *the decision-maker under the 1993 Plan* — the Plan Trustees — *no longer existed*! The MRC had taken their place. Furthermore, the district court relied on First Circuit authority to ignore Hodge's *uncontradicted* testimony, not authority from our Circuit. *Hensley* controls, not *Rodriguez-Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 584 (1st Cir. 1993).

We seem to have become distracted by the absence of any *express* authority in the 1993 Plan permitting the person to whom the Trustees might delegate discretionary authority to set up a competent committee such as the MRC to make these decisions. In the scheme of things, I see this factor as utterly inconsequential. First, it is not surprising that Albertson's set up a committee to make complex decisions on medical matters such as disability, complete with an independent physician. Such a committee is certainly superior to one executive. Moreover, the MRC was well established and regularly functioning by the time the disputed decision was made in this case. Finally, and most importantly, Hodge's uncontradicted testimony demonstrates that the trustees had delegated discretionary authority *to the committee* to make benefit determinations. Hodge said "we discussed that [the Trustees delegation to the committee] fairly often about delegation of authority and who was responsible for making determinations and final determinations." I read this testimony in context to indicate that the MRC was created by the Trustees by way of delegation to Jack Snow.

Under these circumstances, I believe it was not appropriate for the district court wholly to ignore the Plan's delegation clause and Hodge's testimony. My colleagues don't either,

saying that the district court "may not have properly applied and expressly considered" the relevant evidence, but then with all respect, my colleague's conclusion replicates the district court's mistake and exalts form over substance. I reiterate, the MRC was in place and functioning, the Plan Trustees were long gone. Thus, from this record, I conclude that the MRC was properly vested with the requisite discretionary authority to review Ms. Shane's LTD claim. It follows as day the night that our standard of review is for an abuse of discretion.

Moreover, I find it hard to believe that the district court's inappropriate reference to the *contra proferentem* insurance case doctrine is of no moment. Why did the court refer to it if it was irrelevant? My colleagues appear to believe that the district court referenced this doctrine and then ignored it. This is hard for me to accept, especially in the light of the district court's findings and conclusions, all of which disfavored the party that the doctrine puts at a disadvantage: Albertson's. At the very least, I would not guess at what the district court did with this inapplicable doctrine; I would send the case back for clarification.

With all respect to the district court, its analysis was off track. Its analysis relied upon an inapplicable doctrine which inappropriately disfavored Albertson's, used the wrong precedent, and ignored without reason relevant and material testimony and evidence. I would remand with instruction to start over *without* using the doctrine of *contra proferentem*, to use *Hensley* as precedent, and to apply the proper standard of review.

Thus, I respectfully dissent.