**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

KRYSTEN C.,

        Plaintiff-Appellant,

v.

BLUE SHIELD OF CALIFORNIA,

        Defendant-Appellee.

No.   16-16958

D.C. No. 3:15-cv-02421-RS

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
Richard Seeborg, District Judge, Presiding

Argued and Submitted December 8, 2017
San Francisco, California

Before: THOMAS, Chief Judge, and LUCERO[**] and OWENS, Circuit Judges.

Plaintiff Krysten C. appeals the district court's order granting summary

judgment in favor of Defendant Blue Shield in her ERISA action challenging the

denial of her claim for medical benefits. We have jurisdiction pursuant to 28

---

     [*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

     [**]     The Honorable Carlos F. Lucero, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

U.S.C. § 1291. Because the parties are familiar with the factual and procedural history of the case, we need not recount it here. We affirm.

I

Krysten has standing to bring her claim under ERISA. Blue Shield argues that Krysten has not paid and is not obligated to pay Monte Nido for the medical services she received. Blue Shield references an agreement between Monte Nido and Blue Shield's Mental Health Services Administrator which bars Monte Nido from charging the unpaid portion of the bill to Krysten. However, Krysten has contractually agreed with Monte Nido that "treatment is ultimately the responsibility of the client, including treatment provided after an insurance denial." The agreement between Monte Nido and Blue Shield's Mental Health Services Administrator is a separate dispute, unrelated to Krysten's individual contractual rights and obligations.

II

We review de novo the district court's grant of summary judgment in favor of Blue Shield. *Dytrt v. Mountain States Tel. & Tel. Co.*, 921 F.2d 889, 893 (9th Cir. 1990). We review de novo the district court's legal determinations and its interpretation of the terms of an ERISA plan. *Metropolitan Life Ins. Co. v. Parker*, 436 F.3d 1109, 1113 (9th Cir. 2006); *Cisneros v. Unum Life Ins. Co. of America*,

134 F.3d 939, 942 (9th Cir. 1998). We review the district court's findings of fact for clear error. *Parker*, 436 F.3d at 1113.

When a plan grants discretionary authority to determine benefit eligibility to the administrator, as Krysten's plan does, the administrator's decision is reviewed for abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The test for abuse of discretion is whether the Court is "left with a definite and firm conviction that a mistake has been committed." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011). The Court must "consider whether application of a correct legal standard was '(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.'" *Id.* (quoting *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009)).

The ERISA "abuse of discretion" standard is unique. The Court is required to weigh certain factors, including an administrator's conflict of interest and any procedural irregularities. *Abatie v. Alta Health & Life Ins. Co.*, 458 F. 3d 955, 965 (9th Cir. 2006) (en banc) ("[I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict *must be weighed* as a 'facto[r] in determining whether there is an abuse of discretion.'") (emphasis added) (citing *Firestone*, 489 U.S. at 115); *id.* at 972 ("A procedural

3

irregularity, like a conflict of interest, is a matter to be weighed in deciding whether an administrator's decision was an abuse of discretion.").

The district court did not err in its abuse of discretion analysis. Blue Shield's decision on Krysten's appeal in less than two hours without consulting Monte Nido constituted a procedural irregularity. However, the error was made harmless when Blue Shield allowed Krysten and Monte Nido to submit records and re-considered her appeal. Krysten was therefore afforded "a reasonable opportunity for a full and fair review of a claim and adverse benefit determination," including "the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits." 29 C.F.R. § 2560.503-1(h)(2)(ii). The district court gave appropriately brief consideration to the procedural irregularity, which was ultimately harmless.

Krysten contends that Blue Shield's procedure was irregular for other reasons, but these arguments are without merit. It was appropriate for Dr. Carlton to consult on both the denial of Krysten's appeal and the review of Krysten's appeal because ERISA does not mandate new decision-makers for a review of an appeal. 29 C.F.R. §§ 2560.503-1(h)(3)(ii), (v). It was also acceptable for Dr. Battin to make the final decisions on Krysten's appeals because he consulted with board-certified psychiatrists. 29 C.F.R. § 2560.503-1(h)(3)(iii). Lastly, it was not

4

irregular for Blue Shield to decline a live examination of Krysten, as there is no rule or regulation requiring such an examination. Because none of these facts constitute a procedural irregularity under ERISA, the district court did not err when it applied an abuse of discretion standard.

III

Given that the district court did not err in applying the abuse of discretion standard, it did not err in concluding that the administrator did not abuse its discretion when it determined that partial hospitalization, and not ongoing residential treatment, was the most appropriate level of care under the Plan.

Under the Plan, treatments that are medically necessary include only those that are (1) "furnished under generally accepted professional standards to treat illness, injury or medical condition"; (2) "consistent with Blue Shield medical policy"; (3) "consistent with the symptoms or diagnosis"; (4) "not furnished primarily for the convenience of the patient, the attending Physician or other provider"; and (5) "furnished at the most appropriate level which can be provided safely and effectively to the patient." The Plan states: "If there are two or more Medically Necessary services that may be provided for the illness, injury or medical condition, Blue Shield will provide Benefits based on the most cost-effective service."

5

Given that partial hospitalization satisfies the definition of medical necessity, the district court therefore did not err when it granted summary judgment in favor of Blue Shield.

**AFFIRMED.**

FILED

JAN 9 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

OWENS, Circuit Judge, dissenting:

I respectfully dissent. On August 29, 2014, Blue Shield informed Krysten C. that she had "improved" and no longer met its internal criteria for residential treatment. Blue Shield did not, however, specify how Krysten had "improved" since August 22, 2014, when it last approved coverage based on its findings that Krysten was still battling significant medical issues that interfered with her ability to perform simple tasks, such as grocery shopping or preparing a meal.

Blue Shield's internal notes from August 29 may shed some light: there, Blue Shield's physician advisor remarked that "the reason for the request of continued [residential treatment] is that 'it's a long weekend' and because the member's ex-boyfriend is coming to visit." When Blue Shield summarily denied Krysten's expedited appeal, it again noted internally that the only reason given for continued residential treatment was the long weekend and the ex-boyfriend's visit, with "no clinical justification offered." In a case of such "medical and psychiatric complexity" where the plan administrator "operates under a conflict of interest," I fear that Blue Shield's decision to read Krysten's request in the most frivolous light "raise[s] questions about the thoroughness and accuracy of the benefits determination," *Pac. Shores Hosp. v. United Behavioral Health*, 764 F.3d 1030, 1040 (9th Cir. 2014). That is especially true here, as just one week prior, Blue

Shield concluded that residential treatment was appropriate. I do not believe that Blue Shield's later consideration of Krysten's clinical record rendered this procedural irregularity harmless, as Blue Shield continued to rely on its initial, procedurally irregular determination that Krysten had "improved." Accordingly, I would reverse and remand for further proceedings.